UNITED STATES *v.* CHAMBERLIN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 77.   Argued December 16, 1910.—Decided January 3, 1911.

An action lies by the United States to recover the amount of a stamp tax upon execution of a conveyance, payable under the War Revenue Act of June 13, 1898, c. 448, 30 Stat. 448, 470, and the penalties provided in such act for non-compliance therewith are not exclusive of collection of the amount by suit.

A tax may or may not be a debt under a particular statute according to the sense in which the word is found to be used. But whether the Government may recover a personal judgment for a tax depends upon the existence of the duty to pay for the enforcement of which another remedy has not been made exclusive.

Whether an action for debt is maintainable depends not upon who is plaintiff, or how the obligation was incurred, but the action lies wherever there is due a sum either certain or readily reduced to certainty. *Stockwell* v. *United States,* 13 Wall. 542.

Nothing in the nature of a stamp tax negatives *per se,* either the personal obligation to purchase and affix the stamps or the collection of the amount by action; nor do provisions for penalties necessarily exclude personal liability.

Penalties may be provided to induce payment of the tax, and not as a substitute for such payment, and it will not be presumed that Congress intends by penalizing delinquency to deprive the Government of suitable means of enforcing the collection of revenue.

THIS case comes here on certiorari. The action was brought by the United States, in the District Court of

the United States for the District of Colorado, against the executors of the estate of Winfield Scott Stratton, deceased, to recover the amount of stamp taxes claimed to be payable under the War Revenue Act of June 13, 1898.

The plaintiff alleged that in May, 1899, Stratton had conveyed to a corporation known as Stratton's Independence, Limited, certain lands in the State of Colorado by deed reciting a consideration of $4,850,000; that internal revenue stamps of the value of $4,850 were affixed to the deed, whereas the actual consideration of the conveyance and the value of the lands was $9,733,000, and by reason thereof there became due and payable to the United States from Stratton a revenue tax amounting to $9,733, of which the sum of $4,883 remained unpaid, internal revenue stamps therefor not having been attached to the deed or canceled; that the Collector of Internal Revenue of the United States for the District of Colorado had reported the facts to the Commissioner of Internal Revenue, who had determined that the sum of $9,733 should have been paid, and demand for payment having been made and refused the said Commissioner had directed suit to be instituted.

The District Court sustained a general demurrer to the complaint and its judgment was affirmed by the Circuit Court of Appeals.

The applicable provisions of the War Revenue Act of June 13, 1898, chapter 448, (30 Stat., pp. 448–470; R. S. Supp., Vol. 2, pp. 779–804), are set forth in the margin, together with the amendment to § 13 made by the act of March 2, 1901, chapter 806, 31 Stat. 941.[1]

---

[1] "Sec. 6. That on and after the first day of July, eighteen hundred and ninety-eight, there shall be levied, collected and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this Act, or for or in respect of the vellum, parchment, or paper upon which such instruments, mat-

*Mr. Assistant Attorney General Denison*, with whom *Mr. Barton Corneau*, Special Assistant to the Attorney General, was on the brief, for the United States:

The War Revenue Act of 1898 created a personal obli-

---

ters, or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule. . . .

"SEC. 7. That if any person or persons shall make, sign, or issue, or cause to be made, signed, or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereupon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document, or paper, as aforesaid, shall not be competent evidence in any court.

"SEC. 13. That any person or persons who shall register, issue, sell, or transfer, or who shall cause to be issued, registered, sold, or transferred, any instrument, document, or paper of any kind or description whatsoever mentioned in Schedule A of this Act, without the same being duly stamped, or having thereupon an adhesive stamp for denoting the tax chargeable thereon, and canceled in the manner required by law, with intent to evade the provisions of this Act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding fifty dollars, or by imprisonment not exceeding six months, or both, in the discretion of the court; and such instrument, document, or paper, not being stamped according to law, shall be deemed invalid and of no effect: *Provided*, That hereafter, in all cases where the party has not affixed to any instrument the stamp required by law thereon at the time of issuing, selling, or transferring the said bonds, debentures, or certificates of stock or of indebtedness . . . and he or they, or any party having an interest therein, shall be subsequently desirous of affixing such stamp to said instrument, or, if said instrument be lost, to a copy thereof, he or they shall appear before the collector of internal revenue of the proper district, who shall, upon the payment of the price of the proper stamp required by law, and of a penalty of ten dollars, and, where the whole amount of the tax denoted by the stamp required shall exceed the sum of fifty

gation to pay these taxes, which obligation is enforcible by this action at least in the absence of a provision to the contrary in the War Revenue Act itself. 3 Black. Com. 160.

A court of the United States is bound to enforce per-

---

dollars, on payment also of interest, at the rate of six per centum, on said tax from the day on which such stamp ought to have been affixed, affix the proper stamp to such bond, debenture, certificate of stock or of indebtedness or copy, and note upon the margin thereof the date of his so doing, and the fact that such penalty has been paid; and the same shall thereupon be deemed and held to be as valid, to all intents and purposes, as if stamped when made or issued: *And provided further*, That where it shall appear to said collector, upon oath or otherwise, to his satisfaction, that any such instrument has not been duly stamped, at the time of making or issuing the same, by reason of accident, mistake, inadvertence, or urgent necessity, and without any willful design to defraud the United States of the stamp, or to evade or delay the payment thereof, then and in such case, if such instrument, or, if the original be lost, a copy thereof, duly certified by the officer having charge of any records in which such original is required to be recorded, or otherwise duly proven to the satisfaction of the collector, shall, within twelve calendar months after the making or issuing thereof, be brought to the said collector of internal revenue to be stamped, and the stamp tax chargeable thereon shall be paid, it shall be lawful for the said collector to remit the penalty aforesaid and to cause such instrument to be duly stamped. And when the original instrument, or a certified or duly proven copy thereof, as aforesaid, duly stamped so as to entitle the same to be recorded, shall be presented to the clerk, register, recorder, or other officer having charge of the original record, it shall be lawful for such officer, upon the payment of the fee legally chargeable for the recording thereof, to make a new record thereof, or to note upon the original record the fact that the error or omission in the stamping of said original instrument has been corrected pursuant to law; and the original instrument or such certified copy, or the record thereof, may be used in all courts and places in the same manner and with like effect as if the instrument had been originally stamped: *And provided further*, That in all cases where the party has not affixed the stamp required by law upon any such instrument issued, registered, sold, or transferred at a time when and at a place where no collection district was established, it shall be lawful for him or them, or any party having an interest therein, to affix the proper stamp thereto, or, if

formance of this plain, direct mandate of the law thus addressed to this defendant. *Meredith* v. *United States*, 13 Pet. 486, 493; *United States* v. *Lyman*, 1 Mason, 482.

This personal obligation to pay created by the act imposing the tax, whether the tax be of one or another sort, is enforcible by any appropriate civil action, even though the taxing statute does not contain a specific grant of authority to proceed in that way. *United States* v. *Hathaway*, 3 Mason, 324; *Dollar Savings Bank* v. *United States*,

---

the original be lost, to a copy thereof. But no right acquired in good faith before the stamping of such instrument, or copy thereof, as herein provided, if such record be required by law, shall in any manner be affected by such stamping as aforesaid."

The foregoing section (Sec. 13) was amended by the Act of March 2, 1901, chapter 806 (31 Stat. 941), by striking out the words "Schedule A of" in the fourth line of the section as above quoted, and also by inserting in the first proviso after the words "bonds, debentures, or certificates of stock or of indebtedness," the words "or any instrument, document, or paper of any kind or description whatsoever mentioned in Schedule A of this Act."

"Sec. 14. That hereafter no instrument, paper, or document required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded or admitted, or used as evidence in any court until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto, as prescribed by law. . . .

"Sec. 15. That it shall not be lawful to record or register any instrument, paper, or document required by law to be stamped unless a stamp or stamps of the proper amount shall have been affixed and canceled in the manner prescribed by law; and the record, registry, or transfer of any such instruments upon which the proper stamp or stamps aforesaid shall not have been affixed and canceled as aforesaid shall not be used in evidence.

"Sec. 25. That the Commissioner of Internal Revenue shall cause to be prepared for the payment of the taxes prescribed in this Act suitable stamps denoting the tax on the document, article, or thing to which the same may be affixed, and he is authorized to prescribe such method for the cancellation of said stamps, as substitute for or in addition to the method provided in this Act, as he may deem expedient. The Commissioner of Internal Revenue, with the approval

19 Wall. 227; *Stockwell* v. *United States*, 13 Wall. 531; *Chaffee* v. *United States*, 18 Wall. 516; *King* v. *United States*, 99 U. S. 229; *United States* v. *Erie Railway Co.*, 106 U. S. 327; *S. C.*, 107 U. S. 1; *United States* v. *Reading R. R. Co.*, 123 U. S. 113; *United States* v. *Snyder*, 149 U. S. 210; *United States* v. *George*, 6 Blatch. 406, 416; *United States* v. *Phelps*, 17 Blatch. 312; *United States* v. *Pacific Railroad Co.*, 4 Dill. 66; *United States* v. *Hathaway*, 3 Mas. 324; *United States* v. *Cobb*, 11 Fed. Rep. 76;

---

of the Secretary of the Treasury, is authorized to procure any of the stamps provided for in this Act by contract whenever such stamps cannot be speedily prepared by the Bureau of Engraving and Printing; but this authority shall expire on the first day of July, eighteen hundred and ninety-nine. That the adhesive stamps used in the payment of the tax levied in Schedules A and B of this Act shall be furnished for sale by the several collectors of internal-revenue, who shall sell and deliver them at their face value to all persons applying for the same, except officers or employees of the internal-revenue service: *Provided*, That such collectors may sell and deliver such stamps in quantities of not less than one hundred dollars of face value, with a discount of one per centum, except as otherwise provided in this Act. And he may, with the approval of the Secretary of the Treasury, make all needful rules and regulations for the proper enforcement of this Act.

SCHEDULE A.

Stamp Taxes.

\*      \*      \*      \*      \*      \*      \*      \*

"Conveyance: Deed, instrument, or writing, whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value exceeds one hundred dollars and does not exceed five hundred dollars, fifty cents; and for each additional five hundred dollars or fractional part thereof in excess of five hundred dollars, fifty cents.

\*      \*      \*      \*      \*      \*      \*      \*

"SEC. 31. That all administrative, special, or stamp provisions of law, including the laws in relation to the assessment of taxes, not heretofore specifically repealed are hereby made applicable to this Act."

*United States* v. *Boyd,* 24 Fed. Rep. 670; *United States* v. *National Fiber Board Co.,* 133 Fed. Rep. 597; *United States* v. *Mexican Int. Ry. Co.,* 154 Fed. Rep. 519; *United States* v. *Hazard,* Fed. Cas. No. 15,337; *United States* v. *Dodge,* Deady, 124; *United States* v. *Tilden,* 9 Ben. 368; *United States* v. *Washington Mills,* 2 Cliff. 601. See also 2 Dillon, Mun. Corp., § 815.

For English cases applying the principle, all being informations in debt in the Court of Exchequer for duties and other imports and penalties due the Crown, see *Attorney General* v. *Sewers,* Bunb. 225 (1726); *Attorney General* v. *Hatton,* Bunb. 262 (1728); *Attorney General* v. *Weeks,* Bunb. 223 (1726); *Attorney General* v. *Tooke,* Hardr. 334 (1675); *Attorney General* v. ———, 2 Anst. R. 558 (35 Geo. III); *Attorney General* v. *Stranyforth,* Bunb. 97 (1721); *Sir William Waller* v. *Travers,* Hardr. 301 (1674); *Attorney General* v. *Chitty,* Parker, 37 (1744); *Rex* v. *Malland,* Str. 828; and see Comyn's Digest, Title " Debt," A, 9.

The right of the Government to sue to enforce its civil rights has been recognized as not dependent upon specific act of Congress. *Dugan* v. *United States,* 3 Wheat. 172; *United States* v. *Bank,* 15 Pet. 377; but see for express authority, § 3213, Rev. Stat.

The War Revenue Act did not, either expressly or by implication, forbid the collection by this action of these delinquent stamp taxes due under it. The punitive provisions of the act are not in any sense remedies to make the Government whole for its loss of revenue. These penalties, even if remedies at all, were imposed not for failure to pay the tax but for failure to affix the stamps.

It was not the intention of Congress, in making the punitive provisions under this particular act, to renounce the right to collect the tax; or to offer to the person taxed an alternative choice of penalty or tax. The rule of construction as to exclusive remedies is not applied as against

the Government. The Government is not to be limited to one remedy merely because it was the only one given by the statute creating a right. *Meredith* v. *United States, supra; Dollar Savings Bank* v. *United States, supra; Blacklock* v. *United States,* 208 U. S. 75; *United States* v. *Stevenson,* 215 U. S. 190.

Instead of forbidding resort to the method of collecting the delinquent taxes invoked in this suit, the act, by § 31, explicitly authorizes it. See Endlich on Inter. of Stat., § 396. As to the effect of the repealing act of 1902, 32 Stat. 97, see *Hertz* v. *Woodman,* 218 U. S. 205. It was doubtless assumed that all citizens had dutifully paid their taxes when due; but if not, then the Government's right to collect them was sufficiently preserved by § 13, Rev. Stat.

*Mr. D. P. Strickler,* with whom *Mr. P. H. Holme* was on the brief, for defendants in error:

That part of the act of June 13, 1898, requiring stamps on deeds does not create a liability authorizing an action of debt against one failing to comply with its requirements. *Lane County* v. *Oregon,* 7 Wall. 71; *Meriwether* v. *Garrett,* 102 U. S. 472; *Crabtree* v. *Madden,* 54 Fed. Rep. 426; *Fleshman* v. *McClain,* 105 Fed. Rep. 610; *McClain* v. *Fleshman,* 106 Fed. Rep. 880; *United States* v. *Chamberlin,* 156 Fed. Rep. 881.

The remedies and penalties prescribed by said part of said act for a violation thereof are exclusive. Cases *supra,* and *United States* v. *Truck's Admr.,* 27 Fed. Rep. 541; *S. C.,* 28 Fed. Rep. 846; *Craft* v. *Schafer,* 153 Fed. Rep. 175; *Thompson* v. *Allen County,* 115 U. S. 550; *Barkley* v. *Levee Comrs.,* 93 U. S. 258; *Heine* v. *Board of Comrs.,* 19 Wall. 655.

Section 31 of said act does not apply. Even if it be conceded it does apply, no statute giving the right asserted is available.

The repeal of the requirements of the act that deeds
should be stamped, did not abate the penalty prescribed
for a violation thereof.  The Government is·no more
remediless since the repeal than it was before.  *Sackett* v.
*McCaffrey*, 131 Fed. Rep. 219.

MR. JUSTICE HUGHES, after making the foregoing state-
ment, delivered the opinion of the court.

The question presented is whether an action lies by
the United States to recover the amount of a stamp tax
payable under the War Revenue Act of 1898 upon the
execution of a conveyance.

If the statute creates an obligation to pay the tax, and
does not provide an exclusive remedy, the action must be
regarded as well brought.

At common law, customs duties were recoverable by
the Crown by an information in debt or an exchequer
information in the nature of a bill in equity for discovery
and account.  These informations rested upon the gen-
eral principle "that in the given case the common law or
the statute creates a debt, charge, or duty in the party
personally to pay the duties immediately upon the im-
portation; and that, therefore, the ordinary remedies lie
for this, as for any other acknowledged debt due to the
crown."  *United States* v. *Lyman*, 1 Mason, p. 499.  See
also Comyn's Digest (Title "Debt," A, 9); Bunbury's
Reports, *pp. 97, 223, 225, 262.

Applying this principle it was held in the *Lyman case*,
*supra*, and in *Meredith* v. *United States*, 13 Pet. 486, that
the Government was entitled to maintain an action to re-
cover duties upon imports as a personal indebtedness of
the importers.  The duty to pay was there derived from
the language of the act of April 27, 1816, c. 107 (3 Stat.,
p. 310), that "there shall be levied, collected and paid"
the several duties mentioned, and in accordance with an

established rule of interpretation the charge of the duty on the goods was taken to mean a personal charge against the owner. In the case last cited the court by Mr. Justice Story said (p. 493):

"The first question is, whether Smith and Buchanan were ever personally indebted for these duties; or, in other words, whether the importers of goods do, in virtue of the importation thereof, become personally indebted to the United States for the duties due thereon; or the remedy of the United States is exclusively confined to the lien on the goods, and the security of the bond given for the duties. It appears to us clear upon principle, as well as upon the obvious import of the provisions of the various acts of Congress on this subject, that the duties due upon all goods imported constitute a personal debt due to the United States from the importer (and the consignee for this purpose is treated as the owner and importer), independently of any lien on the goods, and any bond given for the duties. The language of the duty act of the 27th of April, 1816, ch. 107, under which the present importations were made, declares that 'there shall be levied, collected, and paid' the several duties prescribed by the act on goods imported into the United States. And this is a common formulary in other acts laying duties. Now, in the exposition of statutes laying duties, it has been a common rule of interpretation derived from the principles of the common law, that where the duty is charged on the goods, the meaning is that it is a personal charge on the owner by reason of the goods. So it was held in *Attorney General* v. ———, 2 Anst. R. 558, where a duty was laid on wash in a still; and it was said by the court that where duties are charged on any articles in a revenue act, the word 'charged' means that the owner shall be debited with the sum; and that this rule prevailed even when the article was actually lost or destroyed before it became available to the owner. Nor is there anything

new in this doctrine; for it has long been held that in all such cases an action of debt lies in favor of the government against the importer, for the duties, whenever by accident, mistake, or fraud, no duties, or short duties have been paid."

A similar rule has been applied in the case of internal revenue taxes. *United States* v. *Washington Mills*, by Clifford, J., 2 Cliff. 601, 607; *Dollar Savings Bank* v. *United States*, 19 Wall. 227; *United States* v. *Pacific Railroad*, by Miller and Dillon, JJ., 4 Dill. 66; *United States* v. *Tilden*, by Blatchford, J., 9 Ben. 368.

In *Dollar Savings Bank* v. *United States*, *supra*, an action of debt was sustained to recover the amount of the internal revenue tax imposed by the act of July 13, 1866, c. 184, 14 Stat. 138, on the undistributed gains carried to the surplus fund of the bank. It was objected that the act provided a special remedy for the assessment and collection of the tax and that no other could be used. But the court, finding no prohibition of the remedy by action, held the argument untenable, saying (pp. 238–240):

"It must also be conceded to be a rule of the common law in England, as it is in Pennsylvania and many of the other States, that where a statute creates a right and provides a particular remedy for its enforcement, the remedy is generally exclusive of all common-law remedies.

"But it is important to notice upon what the rule is founded. The reason of the rule is that the statute, by providing a particular remedy, manifests an intention to prohibit other remedies, and the rule, therefore, rests upon a presumed statutory prohibition. It applies and it is enforced when any one to whom the statute is a rule of conduct seeks redress for a civil wrong. He is confined to the remedy pointed out in the statute, for he is forbidden to make use of any other. But by the Internal Revenue law, the United States are not prohibited from adopting any remedies for the recovery of a debt due

to them which are known to the laws of Pennsylvania. The prohibitions, if any, either express or implied, contained in the enactment of 1866, are for others, not for the government. They may be obligatory upon tax collectors. They may prevent any suit at law by such officers or agents. But they are not rules for the conduct of the State. It is a familiar principle that the King is not bound by any act of Parliament unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests. He may even take the benefit of any particular act, though not named. The rule thus settled respecting the British Crown is equally applicable to this government, and it has been applied frequently in the different States, and practically in the Federal courts. It may be considered as settled that so much of the royal prerogatives as belonged to the King in his capacity of *parens patriæ*, or universal trustee, enters as much into our political state as it does into the principles of the British constitution.

"It must, then, be concluded that the government is not prohibited by anything contained in the act of 1866 from employing any common-law remedy for the collection of its dues. The reason of the rule which denies to others the use of any other than the statutory remedy is wanting, therefore, in applicability to the government, and the rule itself must not be extended beyond its reason." See also *United States* v. *Stevenson*, 215 U. S. p. 197.

The statute, in the *Savings Bank* case, contained a provision (now in § 3213, Rev. Stat.) which expressly authorized the bringing of an action. But the court also found a sufficient basis for its judgment in the general power of the Government to collect by suit taxes that are due, where the statute imposing the tax does not deny that remedy.

This point was presented, considered and decided in the determination of the cause and the decision is none the less authoritative because there was another ground for the ultimate conclusion. *Railroad Co. v. Schutte*, 103 U. S. p. 143; *Union Pacific Co. v. Mason City Co.*, 199 U. S. p. 166.

Neither *Lane County* v. *Oregon*, 7 Wall. 71, nor *Meriwether* v. *Garrett*, 102 U. S. 472, relied upon by the defendants, involved the question. In the former case it was held that the acts of Congress of 1862 and 1863, making United States notes a legal tender for debts, had no reference to taxes imposed by state authority. The Legal Tender Acts expressly provided that the notes should be receivable for national taxes and the context forbade the conclusion that Congress intended to include state taxes under the term "debts," and there was hence no conflict with the statute of Oregon which required the taxes due the State to be collected in coin.

In *Meriwether* v. *Garrett, supra,* it was held that taxes levied before the repeal of the charter of a municipality, other than such as were levied in obedience to the special requirement of contracts entered into under the authority of law, and such as were levied under judicial direction for the payment of judgments recovered against the city, could not be collected through the instrumentality of a court of chancery at the instance of the city's creditors. Such taxes could be collected only under authority from the legislature.

A tax may or may not be a "debt" under a particular statute, according to the sense in which the word is found to be used. But whether the Government may recover a personal judgment for a tax depends upon the existence of the duty to pay, for the enforcement of which another remedy has not been made exclusive. Whether an action of debt is maintainable depends not upon the question who is the plaintiff or in what manner the obligation was

incurred, but it lies whenever there is due a sum either certain or readily reduced to certainty. *Stockwell* v. *United States*, 13 Wall. p. 542.

Here the tax was a stamp tax, but the language as clearly imports the obligation to pay as did that of the statute before the court in the *Meredith case, supra.* Section 6 of the War Revenue Act of 1898 provided that there should be "levied, collected and paid" in respect of the instruments mentioned "by any person or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money" set forth in the schedule which followed. There is nothing in the nature of a stamp tax which *per se* negatives either the personal obligation, otherwise to be derived from the words imposing the tax, or its collection by action. The stamp is to be affixed to the instrument "to denote said tax." Sections 7, 13, 14. Section 25 provided that the Commissioner of Internal Revenue should cause to be prepared "for the payment of the taxes prescribed in this Act suitable stamps denoting the tax on the document, article, or thing to which the same may be affixed." The stamp is the evidence, and its purchase the convenient means, of payment. When a statute says that a person shall *pay* a given tax it obviously imposes upon that person the duty to pay, and this may be enforced through the ordinary means adapted to the recovery of a definite sum due, unless that course is clearly prohibited.

The objection was made in the *Savings Bank case, supra,* that the tax had not been assessed. The court held, however, that no other assessment than that made by the statute was necessary in order to determine the extent of the bank's liability. Following this rule, Judge Blatchford said in *United States* v. *Tilden,* 9 Ben. p. 386, where the action was brought to recover unpaid taxes on income: "The extent of the liability of the individual for

income tax is defined by the statute, equally with the extent of the liability of the bank for the tax on undistributed earnings. In each case it is necessary, in an action of debt for the tax, to resort to sources of information outside of the statute, to ascertain the amount on which the per centum of tax fixed by the statute is to be calculated. . . . The difference between the two cases, in that respect, if there be any, will be, in every case, one of degree merely, not of principle. The statute in imposing the per centum of tax on the income of the individual, makes a charge on him of a sum which is certain for the purposes of an action of debt, because it can be made certain through the action of a judicial tribunal, by following the rules laid down in the statute. That is the principle of the decision in the case of the bank, and it controls the present case " See also *King* v. *United States*, 99 U. S. p. 233; *United States* v. *Erie Railway Co.*, 107 U. S. p. 2; *United States* v. *Philadelphia & Reading Railroad Co.*, 123 U. S. p. 114; and *United States* v. *Snyder*, 149 U. S. p. 215. The statute now before us fixes a tax of a specified amount, according to the consideration or value of the lands conveyed.

It is insisted, however, that the provision for penalties excludes the idea of a personal liability. Thus it is made a misdemeanor to sign or issue one of the described instruments to which a stamp has not been affixed, punishable under § 7 by a fine of not more than one hundred dollars, and not exceeding two hundred dollars under § 10 in the case of a bill or note. And under § 13, where there is intent to evade the law, the offense is punished "by a fine not exceeding fifty dollars, or by imprisonment not exceeding six months, or both, in the discretion of the court." The unstamped instrument is made inadmissible in evidence (§§ 7, 14), is not allowed to be recorded (§ 15), and by the provision of § 13 is to "be deemed invalid and of no effect."

But these penalties were provided in order to induce the payment of the tax, and not as a substitute for payment. It cannot be supposed that Congress intended, by penalizing delinquency, to deprive the Government of any suitable means of enforcing the collection of revenue. In large transactions, as in the case at bar, the fine which could be imposed would be much less than the tax, and no reason is suggested why the Government should forego the collection of that which, under the statute, is its due. Punishment by imprisonment, under § 13, is imposed only where it can be shown that there was an "intent to evade the provisions" of the act, and while this remedy is appropriate in such a case, and is for the obvious purpose of discouraging evasion, it is without application where, for any other reason, the tax has not been paid and thereby the Government has lost its revenue. The provision invalidating the instrument is likewise punitive. The object was not primarily to deprive instruments of effect, but to insure the discharge of the obligation to pay; and that obligation would still be undischarged, even though, by reason of the non-payment, the instrument was deemed invalid.

It is insisted, however, that there is no provision for the removal of the ban from the instrument in case the tax were collected by suit and that this shows the intention to bar the latter remedy; for it is said that the purpose could not be to destroy the effect of the instrument and at the same time to compel the payment of the tax.

This argument proceeds upon a misconception of the statute. The provision under which unstamped instruments are made invalid is found in § 13, which also provides a method of validation on making the prescribed payment. The portion of this section which imposes the penalty is of comprehensive scope and must be deemed to include a conveyance of land, as well as the other instruments within the purview of the statute. While the

language of the first proviso, in its original form, specifically referred to "bonds, debentures, or certificates of stock or of indebtedness," this was broadened by the amendment made by the act of March 2, 1901, chapter 806, 31 Stat. 941, so as to embrace "any instrument, document, or paper of any kind or description whatsoever mentioned in Schedule A of this Act." This amendment, in extending an existing opportunity so as expressly to include all instruments mentioned in the schedule, must be construed to refer not only to instruments subsequently executed but to those as well which had been previously made or issued. No different construction is required by the language of the statute, the obvious policy of which was both to supply a measure of relief from the punitive provision and at the same time to encourage the payment of the tax. The provisos of the section as amended are as follows:

"*Provided*, That hereafter, in all cases where the party has not affixed to any instrument the stamp required by law thereon at the time of issuing, selling, or transferring the said bonds, debentures, or certificates of stock or of indebtedness, or any instrument, document, or paper of any kind or description whatsoever mentioned in Schedule A of this Act, and he or they, or any party having an interest therein, shall be subsequently desirous of affixing such stamp to said instrument, or, if said instrument be lost, to a copy thereof, he or they shall appear before the collector of internal revenue of the proper district, who shall, upon the payment of the price of the proper stamp required by law, and of a penalty of ten dollars, and, where the whole amount of the tax denoted by the stamp required shall exceed the sum of fifty dollars, on payment also of interest, at the rate of six per centum, on said tax from the day on which such stamp ought to have been affixed, affix the proper stamp to such bond, debenture, certificate of stock or of indebtedness or copy, or instru-

ment, document or paper of any kind or description what-
soever mentioned in Schedule A of this Act, and note
upon the margin thereof the date of his so doing, and
the fact that such penalty has been paid; and the same
shall thereupon be deemed and held to be as valid, to
all intents and purposes, as if stamped when made or
issued: *And provided further*, That where it shall appear
to said collector, upon oath or otherwise, to his satisfac-
tion, that any such instrument has not been duly stamped,
at the time of making or issuing the same, by reason of
accident, mistake, inadvertence, or urgent necessity, and
without any willful design to defraud the United States
of the stamp, or to evade or delay the payment thereof,
then and in such case, if such instrument, or, if the origi-
nal be lost, a copy thereof, duly certified by the officer
having charge of any records in which such original is
required to be recorded, or otherwise duly proven to the
satisfaction of the collector, shall, within twelve calendar
months after the making or issuing thereof, be brought
to the said collector of internal revenue to be stamped,
and the stamp tax chargeable thereon shall be paid, it
shall be lawful for the said collector to remit the penalty
aforesaid and to cause such instrument to be duly stamped.
And when the original instrument, or a certified or duly
proven copy thereof, as aforesaid, duly stamped so as to
entitle the same to be recorded, shall be presented to the
clerk, register, recorder, or other officer having charge
of the original record, it shall be lawful for such officer,
upon the payment of the fee legally chargeable for the
recording thereof, to make a new record thereof, or to
note upon the original record the fact that the error or
omission in the stamping of said original instrument has
been corrected pursuant to law; and the original instru-
ment or such certified copy, or the record thereof, may
be used in all courts and places in the same manner and
with like effect as if the instrument had been originally

stamped: *And provided further*, That in all cases where the party has not affixed the stamp required by law upon any such instrument issued, registered, sold, or transferred at a time when and at a place where no collection district was established, it shall be lawful for him or them, or any party having an interest therein, to affix the proper stamp thereto, or, if the original be lost, to a copy thereof. But no right acquired in good faith before the stamping of such instrument, or copy thereof, as herein provided, if such record be required by law, shall in any manner be affected by such stamping as aforesaid."

Neither the punitive provision, nor the means thus afforded to escape it through a voluntary payment, indicate an intention to deprive the Government of the right to compel payment by action. The party may pay the tax in the first instance or he may subsequently make payment as the statute provides and thus render the instrument effective. If he is unwilling or fails to avail himself of this opportunity, why should he be heard to insist that because the instrument is made invalid he should escape payment of what is due the Government? In the face of the express requirement of the statute that he shall pay the tax there is no basis for the contention that from the provisions affecting the validity of the instrument should be implied an intent to prohibit the enforcement of the tax by suit.

Further, as the obvious purpose is to validate the instrument in case the prescribed payment is made, the satisfaction of a judgment for the recovery of the tax must be deemed the equivalent of the payment of the price of the stamps under the provisos above quoted. Section 3216 of the Revised Statutes provides: "All judgments and moneys recovered or received for taxes, costs, forfeitures, and penalties, shall be paid to collectors as internal taxes are required to be paid." If the case is not one within the second proviso permitting the remission

of the penalty, the additional payment of ten dollars will be required to meet the conditions of the first proviso. But so far as the tax is concerned, the person liable therefor, on satisfying the judgment, will have the same right to have the instrument stamped by the collector as though he had paid the taxes to the officer without suit. Such a case would present no administrative difficulty in accomplishing the intent of the statute.

We have examined the other statutory provisions to which our attention has been called in support of the defense, and we find none of controlling significance, or which taken separately or together detract from the force of the provision imposing the obligation to pay the tax and deprive the Government of the remedy here sought.

We are also of opinion that the statute itself provides that payment may be enforced by action. Section 31 makes "all administrative, special, or stamp provisions of law, including the laws in relation to the assessment of taxes, not heretofore specifically repealed," applicable to the act. Within "administrative" provisions must be included those which relate to the collection of the taxes imposed. For the administration of the statute may well be taken to embrace all appropriate measures for its enforcement, and there is no substantial reason for assigning to the phrase which is used in the section quoted a narrower interpretation. It therefore comprehends the authority conferred by § 3213 of the Revised Statutes in the following words:

"And taxes may be sued for and recovered in the name of the United States, in any proper form of action, before any circuit or district court of the United States for the district within which the liability to such tax is incurred, or where the party from whom such tax is due resides at the time of the commencement of the said action."

This provision authorizing suit, with the sanction of the Commissioner of Internal Revenue (Rev. Stat., § 3214),

was originally enacted in 1866 (act of July 13, 1866, c. 184; 14 Stat., p. 111) as an amendment of the Internal Revenue act of June 30, 1864, chapter 173 (13 Stat. 239), and included within its scope the stamp taxes then in force. It must be deemed applicable also to the taxes imposed by the act of 1898.

Upon these grounds we conclude that the United States was entitled to maintain this action and that the demurrer should have been overruled. The judgment is therefore

*Reversed.*