**O. D. JENNINGS & CO. v. REINECKE.**

**SAME v. UNITED STATES.**
Nos: 37298, 39043.

District Court, N. D. Illinois, E. D.
March 15, 1937.

Everett Jennings and Hayden N. Bell, both of Chicago, Ill., and Charles R. Pollard, of Washington, D. C., for plaintiff.

M. L. Igoe, U. S. Dist. Atty., of Chicago, Ill., for defendant.

HOLLY, District Judge.

These are two suits for the recovery of tax assessed and collected under section 900 of the Revenue Act of 1918 (40 Stat. 1122) and penalty and interest.

The operative facts and controlling legal principles are common to both suits and they have been consolidated for trial and disposition.

Section 900 of the Revenue Act of 1918 imposed upon the manufacturers of various articles with respect to sales thereof excise taxes measured by the sales prices of such articles. It imposed a tax of 10 per cent. upon the manufacturers of games (paragraph (5) and a tax of 5 per cent. upon the manufacturers of automatic slot-device vending machines (paragraph (16). All of such taxes became effective February 25, 1919, the day following the enactment of the Revenue Act.

The plaintiff and its predecessors, to whose rights and liabilities plaintiff succeeded, have manufactured, during a period beginning prior to February 25, 1919, and extending to the present time, coin-operated devices of various types, weighing, vending, chance, and amusement machines. With respect to the sales during the last four days of February and the month of March, 1919, of all of its machines, including two types called "Traders" and "Bells," the plaintiff paid the 5 per cent. tax imposed upon automatic vending machines. Plaintiff then decided that these two types of machines, namely, the "Traders" and "Bells" were not vend-

ing machines. Accordingly, beginning with the month of April, 1919, plaintiff ceased paying the tax with respect to the sales of these two types of machines and on its April return took credit for the tax paid on account of the sales of these two types of machines during the last four days of February and all of March.

After more than two years had elapsed, the Collector of Internal Revenue, following an investigation by one of his deputies, determined that the "Bells" and "Traders" were vending machines and that the 5 per cent. excise tax applied to the sales of them. It appears that the Commissioner of Internal Revenue concurred in this determination, since, on the September, 1922, assessment list, which purports to have been signed by him on November 8, 1923, he assessed against the plaintiff for the period from February 25, 1919, through July, 1922, additional excise tax of $20,-107.29, all of which except a negligible amount, represented tax at the rate of 5 per cent. on sales of "Bells" and "Traders," 5 per cent. penalty of $1,005.39 and interest of $3,313.13, or a total assessment of $24,425.81.

About a month after this assessment, the plaintiff filed a claim for its abatement, and a bond to secure its ultimate payment. The ground for relief stated in the claim for abatement was that the "Bells" and "Traders" with respect to which the additional assessment was imposed, were not automatic vending machines subject to tax under section 900 (16) of the 1918 Revenue Act. This was the only ground stated except for the further incidental objection that certain of the sales had been made for export and were therefore exempt, even though the machines were within the taxable classification.

In a letter dated July 30, 1923, the Deputy Commissioner of Internal Revenue advised the Collector at Chicago that the "Bells" and "Traders" were not automatic vending machines taxable at 5 per cent., but were games, taxable at 10 per cent. of their sales price. Accordingly, on the September, 1923, assessment list, which appears to have been signed by the Commissioner on November 16, 1923, the Commissioner assessed against the plaintiff for the period from October, 1919, to and including July, 1922, on account of sales of "Bells" and "Traders" during such period, additional excise tax, computed at the rate of 10 per cent., in the amount of $28,691.-

06, 5 per cent. penalty of $1,434.55, and interest of $9,231.86, or a total assessment of $39,357.47. Moreover, the Commissioner determined that there was an additional tax liability of $2,760.88 for the period from February 25, to August, 1919, arising out of sales of the same two types of machines and computed at the 10 per cent. rate, but that it was not assessable because the four-year period of limitation provided for in section 1322 of the Revenue Act of 1921 (42 Stat. 315) had expired, and accordingly, this amount was not assessed.

The taxpayer pressed his claim that the two types of machines were not taxable, both in conferences with bureau officials in Washington and in written communications. After one of such conferences, the Deputy Commissioner of Internal Revenue wrote the plaintiff as follows on April 5, 1924:

"Please acknowledge receipt of this letter, confirming the agreement reached at the time of the conference that in the event of an adverse decision to your company, relative to the application of the tax, you will pay over to the Collector of Internal Revenue the amount of $2,760.88 due for the period February 1919 to August 1919, which cannot be assessed on account of the operation of the Statute of Limitations, together with the amount found due on the outstanding assessments."

On April 10, 1924, the plaintiff replied in part as follows: "In connection with the part of the claim which has been barred by the Statute of Limitation, I will simply repeat in substance what I said in your office if your Commission decides against me, and if I could pay the amount that is claimed without forfeiting any of my rights, that I had no desire to hide behind the Statute of Limitation and avoid the payment. If this statement is what you refer to as the agreement reached I want you to know that I am willing to be bound by the statement."

In August, 1925, the plaintiff filed a claim for the abatement of the second assessment ($39,357.47). In this claim the plaintiff asserted not only the substantive contention that the "Bells" and "Traders" were not games, but also the procedural objection that the assessment was barred by the statute of limitations.

In a letter to the plaintiff dated March 31, 1926, the Commissioner attempted a final statement of plaintiff's liability for all excise taxes under section 900 of the 1918 Revenue Act and the corresponding section (900) of the 1921 Revenue Act (42 Stat. 291) from the inception of such taxes on February 25, 1919, through July, 1922. The Commissioner reaffirmed his prior decision that the two types of machines, "Bells" and "Traders," although not automatic vending machines within the 5 per cent. tax category, were games subject to the 10 per cent. tax. However, he advised plaintiff that the tax on manufacturers of games had been repealed by the Revenue Act of 1921 (section 1400, 42 Stat. 320), as of December 31, 1921, and that hence there was no tax collectible with respect to the sales of "Bells" and "Traders" after such date. The account of the plaintiff for all taxes under section 900 of the Revenue Act of 1918 and corresponding section of the 1921 Revenue Act from February 25, 1919, through July, 1922, was recast as follows:

| | |
|---|---|
| Total tax on sales of all machines from Feb. 25, 1919, through July, 1922 | $60,649.91 |
| Tax paid | 29,566.05 |
| Total outstanding liability for period stated | $31,083.86 |

This restatement of the account involved two adjustments of the liability as previously set up in the first assessment ($24,425.81) and the second assessment ($39,357.47) which adjustments no doubt were responsible for the restatement. First, both assessments included tax on sales of "Bells" and "Traders" from January through July, 1922. But the Revenue Act of 1921 repealed the tax with respect to the sale of games, and, if the Commissioner was right in holding that those machines were games, not vending machines, there was no tax due with respect to sales of them after December 31, 1921. Moreover, the second assessment ($39,357.47), at the 10 per cent. rate, did not include tax from February 25 to August, 1919, determined to be $2,760.88, because the four-year period of limitation had elapsed as to such tax. However, after this assessment was made, the plaintiff made the statement in a letter to the Commissioner that plaintiff would not hide behind the statute of limi-

tations as to such amount and the Commissioner probably considered this statement a· waiver authorizing the collection of such amount. At any rate, in view of the clear statement by the Commissioner in his letter of March 31, 1926, that games were not taxable after December 31, 1921, and the fact that the restatement of liability carried back to the inception of the tax on February 25, 1919, there can be no doubt (1) that the restated outstanding liability of $31,083.86 did not include any tax with respect to the sales of "Bells" and "Traders" after December 31, 1921, and (2) did include the $2,760.88 tax at 10 per cent. for the period from February 25 to August, 1919, which had been considered barred by limitation at the time the second assessment was made. Of this outstanding liability, it appears that $30,686.-97· represented tax at 10 per cent. on sales of "Bells" and "Traders." The small balance represented additional tax due with respect to sales of other machines.

Upon the basis of the restated account, the Commissioner concluded his letter of March 31, 1926, by advising plaintiff that his claim for the abatement of the first assessment (total $24,425.81, representing tax of $20,107.29 and penalty and interest of $4,318.52) would be rejected. He further advised plaintiff that the remaining portion of the outstanding liability of $31,-083.86, that is to say, $10,976.57 (the difference between $31,083.86, the outstanding liability, and $20,107.29, the amount of tax included in the first assessment) would be adjusted on the claim for the abatement of the second assessment ($39,-357.47).

In accordance with this advice, the claim for abatement of the first assessment was rejected in full in March, 1926. Moreover, in April, 1926, the Commissioner allowed and rejected, in part, plaintiff's claim for the abatement of the second assessment; he abated $24,223.90 of such assessment and let the balance of $15,033.31 stand. This balance covered the $10,976.-57 excess of the restated outstanding liability over the tax included in the first assessment, and the remainder was for penalty and interest.

The total amount of the first assessment and the unabated portion of the second assessment, or a total of $39,459.12, and a substantial additional amount representing interest that accrued after the assessments, were paid by the plaintiff but not at one time. Plaintiff first paid the additional tax of $30,686.97 with respect to sales of "Bells" and "Traders." It then filed two offers in compromise of the penalty and interest, which were rejected. Thereupon it paid the penalty and interest which aggregated $20,853.50, making the total tax, penalty, and interest paid with respect to sales of "Bells" and "Traders" $51,743.73.

Plaintiff filed in due time two claims for the refund of the $30,866.97 tax. In the second claim the plaintiff alleged that the collection of the tax was illegal because assessed after the period of limitation but based this attack upon the erroneous factual statement that the assessment was made March 31, 1926. After paying the penalty and interest, plaintiff filed a third refund claim in which it asked for the refund of the penalty and reasserted the limitation ground stated in the second claim. All of these claims were rejected by the Commissioner.

█ Plaintiff demands return of the tax, penalty, and interest because of three alleged infirmities of the exaction, namely, estoppel, abatement of the first assessment, and limitation of one or both assessments by expiration of the statutory period. The substantive objection that no tax was imposed by law in respect to the sales of "Bells" and "Traders" machines has not been mentioned in the brief and will be considered waived.

█ A mere negative, without explanation other than reference to the rule that estoppel does not apply against government, adequately disposes of the alleged estoppel. Even if extraordinary circumstances ever relaxed that rule there are no such circumstances in these cases; in fact, it is difficult to see in them any of the elements of estoppel, whatsoever.

█ The nature of plaintiff's second ground of attack is not clear. The point seems to be that a letter in which the Commissioner advised the collector that the second assessment was intended to replace all previous assessments worked an abatement of the first assessment. This proposition is without merit. The act of abating an assessment, just as the act of assessing, is a formal administrative act following a definite pattern prescribed by statute or by administrative regulations and practice. The letter was no such formal act—indeed, there is no basis for argu-

ing that it was or could be since the Commissioner did not by that letter intend or in it purport to abate any prior assessment. On the contrary, by the necessary formal act, the Commissioner later rejected the claim for abatement of the first assessment.

In its third contention plaintiff has reached more solid ground. First, plaintiff's counsel say that the four-year period of limitation upon assessment prescribed by the 1921 Revenue Act does not apply to the taxes under consideration, most of which accrued prior to the date of enactment of that act, because such application would be retroactive. They urge that the prior fifteen-month period of limitation upon assessment found in section 3182, R. S. (26 U.S.C.A. §§ 1530–1533 and notes) governs. They even say that the bar of the latter provision had fallen and could not be raised by the 1921 Revenue Act; but no attempt is made to substantiate this statement. And, finally, it is urged that at least part of the tax was for a period antecedent to the four-year period even though that be the applicable limitation period.

The defenses are as follows: First, the four-year limitation period is said to apply. Secondly, a waiver of any period of limitation is charged under the doctrine of United States v. Calumet Steel Co. (C. C.A.) 74 F.(2d) 429, by virtue of the filing of the claim for abatement of the first assessment which did not specify as a ground for the requested relief the lapse of the period of limitation. Thirdly, a waiver is asserted upon the basis of the letter of plaintiff to the Commissioner in which it declines to hide behind the statute of limitation as to the $2,760.88 tax for the period from February 25, 1919, to August, 1919, which was not included in the second assessment. Fourthly, the offers to compromise penalty and interest by their terms are said to effect a waiver of any limitation defect. And, lastly, counsel for defendants insist that recovery is barred upon the limitation ground because the Commissioner was not adequately informed of that ground in any of the claims for refund.

The last two defenses merit summary disposition. In the offers to compromise interest and penalty, plaintiff inserted a reservation designed to safeguard its rights. This reservation was adequate to open any existing limitation against the tax despite the printed waiver clause. As to the alleged insufficiency of the refund claims, its only basis is the factual misstatement that assessment of the tax was made on March 31, 1926. The true dates of assessments being as well known to the Commissioner as to the plaintiff, or at least as easily ascertainable, such misstatement should not be lightly considered a fatal defect, particularly when it is evident that the Commissioner did not rely upon it but considered thoroughly and decided the limitation question in the light of the correct dates. Thus, there is left for consideration plaintiff's claim of limitation and the defenses to it.

Prior to the Revenue Act of 1921, the only limitation applying to miscellaneous taxes was found in section 3182, R.S. (26 U.S.C.A. §§ 1530–1533 and notes), which also furnished authority for the Commissioner to make deficiency assessments. That section provided:

"The Commissioner of Internal Revenue is hereby authorized and required to make the inquiries, determinations, and assessments of all taxes and penalties imposed by this Title, or accruing under any former internal-revenue act, where such taxes have not been duly paid by stamp at the time and in the manner provided by law, and shall certify a list of such assessments when made to the proper collectors respectively, who shall proceed to collect and account for the taxes and penalties so certified. Whenever it is ascertained that any list which has been or shall be delivered to any collector, is imperfect or incomplete in consequence of the omission of the name of any person liable to tax, or in consequence of any omission, or understatement, or undervaluation, or false or fraudulent statement contained in any return made by any person liable to tax, the Commissioner of Internal Revenue may, at any time within fifteen months from the time of the delivery of the list to the collector as aforesaid, enter on any monthly or special list the name of such person so omitted, together with the amount of tax for which he may have been or shall become liable, and also the name of any such person in respect to whose return, as aforesaid, there has been or shall be any omission, undervaluation, understatement, or false or fraudulent statement, together with the amount for which such person may be liable, above the amount for which he may have been or shall be assessed upon any

return made as aforesaid; and he shall certify and return such list to the collector as required by law."

Section 1322 of the Revenue Act of 1921 (42 Stat. 315), enacted November 23, 1921, provided:

"That all internal revenue taxes, except as provided in section 250 of this Act, shall, notwithstanding the provisions of section 3182 of the Revised Statutes or any other provision of law, be assessed within four years after such taxes became due, but in the case of fraud with intent to evade tax or willful attempt in any manner to defeat or evade tax, such tax may be assessed at any time."

It may be conceded that such a limitation provision is ordinarily construed not to apply retroactively. By retroactive application however is not meant that the provision does not apply to taxes that accrued prior to its enactment, but rather that it does not apply to such taxes if the bar of a previous limitation provision has fallen at the time of enactment. Certainly this is the kind of retroactive application which Congress in the Revenue Acts subsequent to the 1921 Act has guarded against. Is there any reason for thinking that a different construction of section 1322 of the 1921 Act was intended—that it should be retroactive?

█ It seems clear from the act itself and from the Committee reports on the bill in Congress that that section was intended to be retroactively effective. No exception was made in that section as to assessments barred at the time of its enactment by section 3182, R.S. On the contrary, it was stated that "notwithstanding the provisions of section 3182 of the Revised Statutes or any other provisions of law" taxes might be assessed within four years after they became due. Significantly, in an immediately preceding section, namely 1320 (42 Stat. 315), which for the first time established a limitation against the collection, as distinguished from assessment, of miscellaneous taxes by suit or other proceeding, it was expressly provided that such section should not apply to suits or proceedings begun at the time of the passage of the act. The exception in the one case is evidence of intention to make no exception in the other. Moreover, the Committee reports, particularly the report of the Finance Committee of the Senate, point to the confusing state of the law

then existing with respect to limitation upon assessments, suits for collection of taxes, and related procedural matters, thus disclosing a reason for attempting to settle the whole matter by the provisions of the 1921 act for past as well as future taxes.

█ The constitutionality of section 1322 as thus construed to apply to taxes, the assessment of which was barred by prior law at the time of the enactment of the 1921 act, might be questionable except for one circumstance. Prior to the Revenue Act of 1921, except for income, excess profits, and war profits taxes levied by the 1918 Revenue Act, there was no limitation whatsoever upon the collection of taxes by suit without assessment. Stange v. U. S., 282 U.S. 270, 51 S.Ct. 145, 75 L.Ed. 335, Dollar Savings Bank v. U. S., 19 Wall. 227, 22 L.Ed. 80, U. S. v. Chamberlin, 219 U.S. 250, 31 S.Ct. 155, 55 L.Ed. 204, and U. S. v. Nashville C. & St. Louis Railway (C.C.A.) 249 F. 678 and Treasury Decision 111, vol. 2 T.D. page 142, and Treasury Decision 676, vol. 6 T.D. page 71. See, also, the report of the Finance Committee of the Senate, page 21, with special reference to sections 250, 1322, and 1320 of the Revenue Act of 1921 (42 Stat. 264, 315). Accordingly, even though the period of limitation on assessments against any taxes had expired at the date of the enactment of the 1921 Revenue Act, not only had the liability to such taxes not been extinguished, but the government still had an effective and unimpaired remedy for enforcing that liability. The only practical effect of the expiration of the limitation period was to prevent summary collection of the tax by administrative action involving assessment, notice, and demand, and distraint. It can hardly be held that the restitution of the power of the Commissioner to enforce by administrative procedure the still existing liability, enforceable by suit, was unconstitutional.

█ But even if the later provision should not be construed to apply retroactively; or, if so construed, it would be invalid, plaintiff has made no case. The 15-month limitation period in section 3182, R.S. did not run from the due date of the tax or the time of filing the return. It ran from the time of the delivery by the Commissioner to the Collector of the original assessment list on which the additional taxes should have appeared but from

which they were omitted. In other words the omission of the Commissioner to assess the taxes, not the omission of the taxpayer to return them, set the limitation going. United States v. O'Neill (C.C.) 19 F. 567, 571. In the instant cases there is no evidence to show when, if ever, the 15-month period of limitation lapsed as to any of the tax involved. There is no evidence as to the assessment list or lists on which the tax should have been set up by the Commissioner. There is no evidence as to the time when such list or lists were delivered to the Collector. Accordingly, two conclusions follow: First, there is no proof that the assessment and collection of the tax fell afoul of section 3182, R.S. even if that section was not superseded by the 1921 provision; and, secondly, the retroactive effect of the 1921 provision, if intended and if assumed to be invalid, is not shown to be invalid in respect to the tax here involved because there is no proof that assessment of the tax was barred by earlier provision at the time of enactment of the later.

■ Whatever the applicable period of limitation, U. S. v. Calumet Steel Company (C.C.A.) 74 F.(2d) 429, validates the collection of a large part of the tax. In that case it was held that upon the filing of a bond in connection with a claim for the abatement of an assessment, which claim did not raise the statute of limitation, the tax obligation took on the nature of the bond obligation and was enforceable whether the period of limitation as to the tax had expired previously or whether it should expire subsequently. The first assessment ($24,425.81) falls within the principle. Even if the period of limitation upon the assessment had expired when that assessment was made, the subsequent filing of the claim for abatement and bond would in effect waive the limitation. However, the doctrine of the Calumet Steel Case does not go so far as to authorize in the teeth of the statute of limitation the enforcement of any greater amount than that covered by the particular assessment. Thus, in the instant cases it would seem that the claim for abatement

of the first assessment and bond would only justify the collection of the amount of that assessment.

In so far as the second assessment exceeded the first assessment, its collection can be justified only if the limitation period had not expired. This assessment covered taxes only for the four years preceding the date of the assessment. Hence, the collection of all or part of this amount seems entirely proper. But one doubt arises because of certain peculiar facts of these cases.

The first assessment was for tax at the 5 per cent. rate from February 25, 1919, through July, 1922. The second assessment was for tax at the 10 per cent. rate from October, 1919, through July, 1922. The 10 per cent. tax for the period from February 25, 1919, to August, 1919, namely $2,760.88, was not included in the latter assessment because of the expiration of the four-year period of limitation, but, of course, 5 per cent. tax for this initial period had been assessed as part of the first assessment and was collectible because assessed within four years and because as part of the first assessment it is within the scope of the Calumet Steel Case doctrine. In his letter of March 31, 1926, the Commissioner attempted to restate and shift plaintiff's tax liability; the liability subsequent to December 31, 1921, which had been assessed he eliminated because the tax on games was terminated then; and he included the full 10 per cent. tax for the period prior to October, 1919, although only 5 per cent. had been assessed for such period. Thus, the excess for such period clearly was collected.

■ The question arises whether such excess was barred by the four-year limitation upon assessment. The answer is that in its letter of April 10, 1924, to the Commissioner the plaintiff waived any limitation as to the entire 10 per cent. tax of $2,760.88 for the period from February 25, 1919, to August, 1919, so that the excess of such amount over the 5 per cent. tax for such period included in the first assessment was properly collectible.