[CONSTRUCTION OF STATUTE.  JURISDICTION.]

The UNITED STATES *against* 350 CHESTS OF TEA.  LIP-
PINCOTT and Others, Claimants.

The term " *concealed*," as used in the 68th section of the Duty Act of the 2d of March, 1799, ch. 128. applies only to articles intended to be secreted and withdrawn from public view on account of the duties not having been paid, or secured to be paid, or from some other fraudulent motive. The forfeiture inflicted by that section, does not extend to a case where, the duties not having been paid or secured in any other manner than by giving the general bond, and storing the goods according to the 62d section of the act, the goods were fraudulently removed from the storehouse agreed upon by the collector and the importer, by some person other than the claimants, who were *bona fide* purchasers of the goods, and without their knowledge and consent, to another port, where the goods were found stowed on board the vessel in which they were transported, in the usual manner of stowing such goods when shipped for transportation.

Under the 62d section of the act, in the case of *teas*, the duties are " secured to be paid," in the sense of the law, by the single bond of the importer, accompanied by a deposit of the teas imported, to be kept under the lock and key of the inspector, and subject to the control of the collector and naval officer, until the duties are actually paid, or otherwise secured; and no forfeiture is incurred, under the 68th section, by the removal and concealment of the goods on which the duties have been thus " secured to be paid."

To authorize the seizure and bringing to adjudication of teas, under

the 43d section of the act, it is necessary, not only that the chests should be unaccompanied by the proper *certificates*, but also by the *marks* required to be placed upon them by the 39th section.

The lien of the government for duties, attaches upon the articles from the moment of their importation, and is not discharged by the unauthorized and illegal removal of the goods from the custody of the custom house officers

*Quære,* Whether such lien be enforced against a *bona fide* purchaser without notice that the duties were not paid or secured?

The lien for duties cannot, in any case, be enforced by a libel of information in the Admiralty; the revenue jurisdiction of the District Courts, proceeding *in rem*, only extending to cases of seizures for *forfeitures* under laws of impost, navigation, or trade of the United States.

But a suit at common law may be instituted in the District or Circuit Courts, in the name of the United States, founded upon their legal right to recover the possession of goods upon which they have a lien for duties, or to recover damages for the illegal taking or detaining the same.

1827.

U. States
v.
350 Chests
of Tea.

THIS cause was argued by the *Attorney General,* for the United States, and by Mr. *Webster* and Mr. *Coxe,* for the claimants.

*March 8th.*

Mr. Justice WASHINGTON delivered the opinion of the Court.

*March 15th.*

This was a libel filed in the District Court of the United States for the Southern District of New-York, in the name of the United States, against 350 chests of hyson skin tea, imported from Canton in the ship Benjamin Rush, as forfeited to the use of the United States. The libel charges, that the chests of teas were seized by the collector of the customs for the District of Philadelphia, on the 6th of December, in the year 1825, at the city of New-York, on waters navigable from the sea by vessels of ten or more tons burthen, and alleges three distinct grounds of forfeiture. First, that the teas, being subject to pay duties, were imported into the United States at Philadelphia, and were there unladen without having been entered at any custom house, and without a permit from any collector and naval officer, or from any collector of the customs of the United States, the duties imposed thereon not having been paid, or secured to

be paid, according to law. Secondly, that the said chests of tea, so imported, and subject to pay duties, were afterwards found concealed on board a certain vessel, in the Southern District of New-York, the said duties not having been paid, or secured to be paid, as the law requires. Third, that the said teas, being so imported, and subject to duties, were landed at Philadelphia without the permit of the inspectors of the customs of that District, and were deposited in a storehouse in the said District, agreed on by the collector of the said District and Edward Thomson, the importer of the said teas, who, previous to the landing thereof, elected to give, and did actually execute and give, to the collector of the said District, his bond. without a surety, in double the amount of duties chargeable on the whole amount of teas so imported, in conformity with the provisions of the 62d section of the act to regulate the collection of duties on imports and tonnage. That the said teas were afterwards clandestinely and fraudulently removed by the said Thomson, or his agents, from the storehouse in which they had been deposited, without any permit from the collector and naval officer of the said District, and without the duties thereon having been first paid, or secured to be paid, and were afterwards found concealed as before mentioned.

To this libel a claim and answer were filed on behalf of Joshua Lippincott, William Lippincott, and Benjamin W. Richards, of Philadelphia, setting forth, that the said teas were imported into Philadelphia by Edward Thomson, who had the same regularly entered. and unladen under a permit duly granted by the collector, in the presence of the proper custom house officers of that port; and that the said chests of tea were duly inspected, weighed, marked, and numbered, as the law required. That bond was given by Thomson, and the teas were stored, as stated in the libel, in conformity with the 62d section of the law therein referred to; that a certificate, signed and sealed in due form of law, was issued to accompany each of the chests of tea, which certificates were delivered to Thomson, and afterwards came to the possession of the claimants, to whom a bill of sale of the said teas had been made by the said Thomson, as a security for certain large advances made

by them to Thomson, and that the said certificates were then held by them as their property. This bill of sale being set out in the claim, purports to convey to the claimants all Thomson's right in these, and other chests of teas, with power to enter the same, from the custom house stores, and to secure the duties thereon, should it be deemed necessary, as a collateral security for certain notes granted, and to be granted, to Thomson, by the claimants. The claim then proceeds to state, that Thomson, at the same time, endorsed to the claimants the invoice and bills of lading of the said teas, and delivered the same, together with the bill of sale, and his key of the store, in which the teas were deposited, to the claimants; that the chests of tea mentioned in the libel were taken from the storehouse in which they had been deposited without the knowledge or consent of the claimants, nor can they say by what means they were so taken; but they have heard and believe, that they were taken out by Thomson, to whom the claimants had delivered the key for another purpose, and were delivered to Francis H. Nicoll, who caused them to be shipped to New-York, with full notice at the time that they were the property of the claimants.

The District Court decreed the teas to be forfeited to the United States, from which sentence an appeal was prayed to the Circuit Court, where the same was reversed, and restitution decreed to the claimants, from which last decree the cause comes before this Court by appeal; and the only question to be decided is, whether, upon this libel, and the facts agreed upon in the District Court, the teas in question are liable to forfeiture for any of the causes stated in the libel.

The first ground of forfeiture alleged in the libel, is so satisfactorily disposed of by the facts agreed in the case, that it was not relied upon, or even noticed, in the argument of the cause in this Court. The charge is, that the teas in question, being subject to the payment of duties upon their importation, were unladen at the port of Philadelphia, without having been entered at any custom house, and without a regular permit to land the same having been first obtained.

1827.

U. States
v.
350 Chests
of Tea.

The facts agreed, admit that they were entered, inspected, bonded, and stored, according to law, and particularly to the 62d section of the Duty Act, as alleged in the claim.

The next alleged cause of forfeiture is, that the teas were found concealed on board a certain vessel, the duties thereon not having been paid, or secured to be paid.

This charge is also negatived by the statement of facts, which admits, that the teas were not secreted, nor were they found secreted at the time of seizure, on board the vessel where they were seized, but were then and there stowed in the usual and customary manner of stowing such property, when put on board for transportation. It is, nevertheless, insisted, on the part of the United States, that although the conclusion that the teas were not found secreted, must now be admitted as a fact not to be controverted in argument, nevertheless, the Court is bound to say that. upon a view of the facts agreed in the statement, which forms part of this record, they were concealed in point of law, and according to the true intent and meaning of the act of Congress, under which the seizure was made. These facts are, that, after the teas were placed in the storehouse agreed upon by the collector and the importer. they were fraudulently removed from thence by some persons other than the claimants, and without their knowledge or consent ; and after a regular entry and clearance at the custom house in Philadelphia, were shipped on board the vessel in which they were seized, and transported to the port of New-York, the duties thereon not having been paid or secured, in any other manner than by giving the general bond, and storing the teas according to the provisions of the 62d section of the Duty Act.

*Question as to the alleged forfeiture, on the ground of the goods being found concealed.*

This question arises out of the 68th section of the Duty Act, and depends upon the true construction of that section. It declares, so far as concerns this particular case, " that every collector, &c. shall have full power and authority to enter any ship or vessel in which they shall have reason to suspect any goods, &c. subject to duties. are concealed, and therein; to search for, seize, and secure, any such goods," &c. and " *all such goods*, &c. on which the duties shall not have been paid, or secured to be paid, shall be forfeited."

The argument upon this section is, that, after the goods are stored, according to the provisions of the 62d section, the fraudulent removal of them from the place in which they are so deposited, without a permit, and without paying or securing the duties, in the mode prescribed by the act, amounts to a concealment of them, in whatever place, and under whatever circumstances, they may be found ; that the real ground of forfeiture of goods so removed, is the non-payment of the duties, or the not securing of the same according to the provisions of this section ; and the concealment of them is merely a circumstance to warrant the custom house officer in searching for, seizing, and bringing them to adjudication.

The Court cannot yield its assent to either of these propositions. The act provides for, and defines, by express enactments, the various acts which should draw after them the penalty of forfeiture of the goods imported. Thus, if they be unladen at any other time than in open day, unless by a special license, or at any other time, without a permit by the proper officer, they are subject to forfeiture under the fiftieth section ; and the like consequence follows as to distilled spirits, wines or teas, which are landed without the special permit provided for by the 37th section, or otherwise than under the inspection of the surveyor or other officer acting as inspector of the revenue, contrary to the direction of the 38th section. These are all acts of illegal importation, and, on that ground, the goods are made liable to forfeiture. But after they are regularly entered, landed, bonded and stored, there is no part of this act which exposes them to this penalty for being illegally withdrawn from the place of their deposit, without a permit from the proper officer, or without the duties thereon being first paid or secured to be paid. Nor would it seem, but for the extraordinary circumstances which have attended these and the other teas mentioned in these proceedings, to have been necessary to devise other guards than those which the 62d section of the act has provided for securing to the United States the payment of the duties. The key of one of the locks to be placed on the store in which the teas are deposited, is directed to be retained by the inspector, who is for-

bidden to deliver out any part of them without a written permit from the collector and naval officer, to the obtaining of which, it is necessary that the duties should be first paid on the parcel which the owner desires to remove, or should be secured to be paid by a bond with surety or sureties to the satisfaction of the collector, on the penalty and on the terms prescribed in this section. The security thus provided by the deposit might be lost by the destruction of the articles themselves by fire, or might be jeoparded by the fraudulent, the felonious, or the violent removal of them from the place of their supposed safe custody. But that they should be so removed with the fraudulent connivance, or in consequence of the culpable carelessness of the inspector, or of any other officer of the customs, was a risk which probably did not enter into the contemplation of the legislature. Be this as it may, it is perfectly clear, that no provision is any where made to meet the case of goods so illegally removed, whether by subjecting them to forfeiture, or by pointing out any other remedy to guard the government against the loss to which those acts might expose it. A remedy, although it may, under certain circumstances, be an inadequate one, is, _Lien of the government for the duties._ nevertheless, provided by the general principles of law. The lien of the government for the duties, which attached upon the articles from the moment of their importation, was not, and could not be, discharged by the unauthorized and illegal removal of the articles from the custody of the inspector, or other custom house officer, having charge of them, and might have been enforced by the ordinary remedies provided by law in similar cases. Whether it could be enforced against a fair *bona fide* purchaser of goods, removed from the store by a permit from the proper officers, without notice that the duties were not paid or secured, is a question which does not arise in this case, and upon which no opinion, therefore, is intended to be given.

In order, then, to subject teas illegally removed from the storehouse in which they were deposited, to forfeiture, under this count in the libel, it is essential for the United States to prove, upon the trial, not only that the duties for which they were liable were unpaid, or not secured to be paid, but that they were found concealed at the time they were seized. A

suspicion of this fact, if honestly entertained by the person searching for, and making the seizure, would be sufficient to protect him against any claim for damages in consequence of those acts, although it should afterwards appear, on the trial, that, in point of fact, the articles were not concealed. But the owner of the goods is not put upon his trial to prove that the duties were paid or secured, until that fact is established. The expressions in the latter part of this section leave no room for doubt upon this point. They are, that " *all such goods,* &c. on which the duties shall not have been paid, or secured to be paid, shall be forfeited," that is to say, the goods so concealed and seized.

The argument, that goods subject to duties are, in the view of the law, and by a fair construction of this section, *concealed* wherever and under whatever circumstances they may be found, is equally inadmissible. If that were the intention of the legislature, the offence would consist, not in the concealing of such goods, but in having the possession of them; and the authority to seize, applying to such a case, would, no doubt, have extended to all goods *wherever found* out of their place of deposit, on which the duties had not been paid, or secured to be paid. The term *concealed* used in this section, is one of plain interpretation, and obviously applies to articles intended to be secreted and withdrawn from public view on account of their being so subject to duties, or from some fraudulent motive.

But if the argument upon this part of the case were well founded, the count in the libel which we are now examining could not be maintained, since we are all of opinion, that the duties upon these teas were *secured to be paid,* within the fair construction of the 62d section of the duty law. By this section, the duties upon all goods imported, and subject thereto, are to be paid, or secured to be paid, before a permit to land them can be granted. If the importer elect not to pay them, he is at liberty to secure them by bond with one or more sureties to the satisfaction of the collector, or the collector may accept his own bond without sureties; but, in the latter case, the goods themselves must be deposited with the proper custom-house officer pointed out in the section. These provisions apply thus far to all kinds of

1827.

U. States
v.
350 Chests
of Tea.

Goods not liable to forfeiture upon the ground of the duties not having been secured.

goods. The difference as to the mode of securing the du-ties between teas imported from China or Europe, and other goods, consists in the following particulars. As to the former, the teas, where bond without sureties is given, are to be deposited, at the expense and risk of the importer, in a store to be agreed on by him and the inspector, on which the inspector is to affix two locks, the key of one to be re-tained by himself, and the other to be kept by the importer; and it is made the duty of the inspector to attend, at all reasonable times, for the purpose of delivering out the teas as the same may be required; but he is forbidden to deliver any part of them without a permit in writing, signed by the collector and naval officer, to the obtaining of which, it is required, that the duties on the teas to be delivered shall be first paid, or secured to be paid, by a bond to be given with a surety or sureties, to the satisfaction of the collector, for payment of the duties at particular periods mentioned in the section. And in case the duties should not be paid at the period so stipulated in the first bond, or secured to be paid in the manner last specified, the collector is required to sell, at public auction, so much of the teas as may be necessary, and after retaining the sum which shall not have been so paid, or secured, together with the expenses of sale and safe keeping of the teas, to return an overplus, if any, to the owner thereof.

As to goods other than teas, if the importer elect, instead of paying the duties, or securing the same by giving bond with satisfactory sureties, to give his own bond without sure-ties, the collector is required to accept such bond, together with a deposit of so much of the goods on which the duties are payable, as in his judgment shall be sufficient security for the amount of the duties for which such bond shall have been given, together with the charge of safe keeping, and seizing the same, which goods, so deposited, are to be kept by the collector at the expense and risk of the party on whose account they were deposited, until the sum specified in the bond shall become due; and if the same be not then paid, so much of the goods deposited as may be necessary to discharge the duties and expenses are to be sold, and the proceeds to be disposed of as in the former case.

From this recital of the most material parts of the above section, it is most apparent, that the legislature contemplated the bond of the importer, accompanied by a deposit of all the teas imported, to be kept under the lock and key of the inspector, and subject to the control of the collector and naval officer until the duties were paid, or otherwise secured, as an equivale t security, with a bond, and approved sureties, if the importer had elected to give such a bond in the first instance. By no other construction can the express terms of the section be satisfied. The importer has an option allowed him, at the time of making his entry, *to secure the duties*, instead of paying them. How may he secure them? The section proceeds immediately to point out the two following modes: "On the same terms and stipulations as on other goods imported;" that is to say, by bond, with sureties satisfactory to the collector, or "by his own bond in double the amount of the duties," which latter bond, accompanied by the deposit of the teas, as before mentioned, the collector is required to accept. It is perfectly obvious, that this latter security is to be accepted in lieu of, and as equivalent to, the former. And we may confidently ask, is it not so? The condition of the China trade must be in a deplorable state, and must necessarily be discontinued, whenever the value of the teas imported from that country shall fall below the amount of the duties imposed upon them; and unless such a state of things could have been contemplated, what better security for payment of the duties could have been devised, consistent with the existence of the trade itself, than the uncontrolled possession of the articles subject to the duties, with the power to sell the same for their discharge in case they should not be paid when they should become due, or should not be otherwise secured to be paid? As an additional evidence that Congress considered this security as at least equivalent to bond with approved securities, this section goes on to provide, that the amount of each bond taken for the duties on any teas delivered under a permit from the store after a deposit, shall be endorsed immediately on the original bond given by the importer, specifying the amount of duty secured on the teas delivered out, by whom, and the term of payment. It

1827.

U. States
v.
350 Chests
of Tea.

then, the whole quantity of teas deposited should be with-drawn in the mode prescribed by this section, either at one, or at different periods, before the expiration of the term of credit allowed, the United States would have precisely the same security that they would have had, if the importer had, in the first instance, elected to give bond, with approved sureties, instead of his own bond, accompanied by a depo-sit of the articles themselves subject to the duties.

The goods not liable to for-feiture under the 43d sec-tion of the act.

In consequence of an intimation of the Attorney Gene-ral, that, in case the decision of the Court should be against the United States upon what we have called the second count in the libel, he should move to amend the libel by inserting a count under the 43d section of this law, the cause was argued at the bar as if such a count now formed a part of the libel. But, if the above opinion be correct, it is manifest that such a count would not help the case, since, if the duties were secured to be paid according to the provi-sions of the 62d section, no forfeiture could be decreed un-der the 43d section. The facts agreed, present, besides, an additional reason why such a decree could not properly be made under that section, since they admit, that each chest of the teas in question, at the time of seizure, was duly number-ed, and had on it all the marks which the law requires, and that the certificates required by the act to accompany each of the chests, remained in the hands of the claimants at Phi-ladelphia. Now, we are all of opinion, that, to authorize a seizure of teas, and bringing them to adjudication, it is ne-cessary, under the 43d section, not only that the chests should be unaccompanied by the proper *certificates*, but also that they should be unaccompanied by the *marks* re-quired to be placed upon them by the 39th section. Both must concur in order to justify a seizure, and to raise such a presumption that the teas are liable to forfeiture, as to throw upon the claimant the burthen of proving that they were imported according to law, and that the duties thereon were paid, or secured to be paid, in order to avoid a sen-tence of condemnation.

Enough has already been said to dispose of the third count in the libel, even if it had been pressed in the argu-ment of the cause, since it is not pretended that there

is any section of the above act which subjects teas to forfeiture, on the ground of their having been clandestinely and fraudulently removed from the store in which they were deposited, by the importer or by any other person, without a permit, and without the duties thereon having been first paid or secured to be paid. It is quite unlikely that a case so extraordinary and disgraceful as that which has given rise to this controversy, was, or could have been anticipated by the legislature, which enacted the law under consideration. One would have supposed, but for the instance before us, that the act had provided every guard for the safety of the public interest, which any imaginable contingency could have rendered necessary.

The only remaining objection taken to the decree of the Circuit Court is, that the payment of the duties to which these teas were subject, ought to have been made a condition of their restitution to the claimants, or that they should have been decreed to be sold towards the payment of the duties for which the original bond of Thomson was given, and which remained unpaid.

Admitting that those duties were even now due, which is not the case, we could not yield our assent to the correctness of this objection, even if the prayer of the libel had corresponded with such a decree, and even if the teas in question were liable for duties beyond those properly chargeable against the quantity seized, which is by no means conceded

By the 9th section of the Judiciary Act, the District Courts have exclusive original cognizance, amongst other subjects, of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, or trade, of the United States, where the seizures are made on waters navigable from the sea by vessels of a specified burthen, within their respective Districts, as well as upon the high seas; and, also, of all seizures made on land, or other waters than as aforesaid, and of all suits for penalties and forfeitures incurred under the laws of the United States. They have, also, cognizance concurrent with the State Courts, of all suits at common law where the United

1827.

U. States
v
350 Chests
of Tea.

Whether the lien of the United States, for the duties, could be asserted in the present case?

States sue, where the matter in dispute, exclusive of costs, amounts to the sum or value of 100 dollars.

Now, it is not pretended that this is a civil cause of admiralty and maritime jurisdiction ; and it has already been shown, that there is no law of the United States, of impost or otherwise, to warrant the seizure of the teas in question, or to subject them to forfeiture. But, even if there were such a law, the only proceeding which could have been instituted under it, must have been, to forfeit the articles seized, and not to subject them to the payment of duties. If the case be not one of forfeiture, we can perceive no ground upon which the District Court could entertain a suit, by way of libel, to enforce the payment of duties. No jurisdiction is conferred upon that Court in such a case, either by the above section of the Judiciary Act, or by any other act of Congress. There is no doubt, but that a suit at common law might be instituted in that Court, as well as in the Circuit Court, in the name of the United States, founded upon their legal right to recover the possession of goods upon which they have a lien for duties, or damages for the illegal taking or detaining of the same. But the remedy which has been selected, is not one which can obtain the sanction of this Court.

The decree of the Circuit Court, reversing that of the District Court, and awarding restitution to the claimants, must be affirmed.