(C. D. 1083)

AMERICAN PILLOWCASE & LACE CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 11, 1948)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: In this case the importer protests against the assessment by the collector of customs on a case of linen handkerchiefs imported from England bearing the marks "APL 670." The entire importation consisted of one package which was designated for examination at the appraiser's stores but was not delivered. The discharging inspector's report showed that the case was listed on the ship's manifest but not found for delivery. It is indicated in the record by certain circumstantial evidence that pilferage occurred, but the record contains no affirmative evidence as to the time the alleged theft occurred. There is evidence on the part of the importer that the package was not received by it.

Plaintiff claims in its protest that the liquidation is void because the appraisement is void for lack of examination of the merchandise. Therefore, it is claimed that the liquidation should be set aside and the duties refunded. It is further claimed that the collector failed to deliver the merchandise and the duties should be refunded. Two amendments were filed to the original protest. The first made the further claim that the importer is not liable for the payment of the duties by reason of the provisions of section 448 of the Tariff Act of 1930. This motion was granted. Thereafter, a second amendment was offered in which claim was made that the liquidation is premature for the reason that the collector prior to said liquidation did not have the liability of the steamship company for the duties accruing under section 448, *supra*, determined by court action on the vessel bond given by said company.

Counsel for the Government at the hearing objected to the second amendment on the ground of lack of jurisdiction in this court to review the collector's action, insofar as it relates to customs bonds, in that it is claimed that discretionary powers in such matters are

vested exclusively in the Secretary of the Treasury under section 623 of the Tariff Act of 1930. Decision on this motion was reserved. We hereby grant the motion to amend. On this point the general rule has been evolved by the decisions that an amendment is permissible if it covers the same merchandise as that involved in the original protest. See the leading case on amendments to protests, *United States* v. *Macksoud Importing Co. et al.*, 25 C. C. P. A. (Customs) 44, T. D. 49041.

Three questions are therefore before us for determination: (1) Is the liquidation illegal, null, and void, for the reason that the merchandise covered thereby was not examined by the appraiser? (2) Is the importer relieved from liability for duties under the provisions of section 448, *supra*? (3) Is the liquidation premature because the collector failed to bring an action on the bond against the steamship company?

The pertinent provisions of the statute involved are as follows:

SEC. 448. UNLADING.

(a) Permits and Preliminary Entries.—Except as provided in section 441 of this Act (relating to vessels not required to enter), no merchandise, passengers, or baggage shall be unladen from any vessel or vehicle arriving from a foreign port or place until entry of such vessel or report of the arrival of such vehicle has been made and a permit for the unlading of the same issued by the collector: *Provided*, That the master may make a preliminary entry of a vessel by making oath or affirmation to the truth of the statements contained in the vessel's manifest and delivering the manifest to the customs officer who boards such vessel, but the making of such preliminary entry shall not excuse the master from making formal entry of his vessel at the customhouse, as provided by this Act. After the entry, preliminary or otherwise, of any vessel or report of the arrival of any vehicle, the collector may issue a permit to the master of the vessel, or to the person in ·charge of the vehicle, to unlade merchandise or baggage, but except as provided in subdivision (b) of this section merchandise or baggage so unladen shall be retained at the place of unlading until entry therefor is made and a permit for its delivery granted, and the owners of the vessel or vehicle from which any imported merchandise is unladen prior to entry of such merchandise shall be liable for the payment of the duties accruing on any part thereof that may be removed from the place of unlading without a permit therefor having been issued. Any merchandise or baggage so unladen from any vessel or vehicle for which entry is not made within forty-eight hours exclusive of Sunday and holidays from the time of the entry of the vessel or report of the vehicle, unless a longer time is granted by the collector, as provided in section 484, shall be sent to a bonded warehouse or the public stores and held as unclaimed at the risk and expense of the consignee in the case of merchandise and of the owner in the case of baggage, until entry thereof is made.

(b) Special Delivery Permit.—The Secretary of the Treasury is authorized to provide by regulations for the issuing of special permits for delivery, prior to formal entry therefor, of perishable articles and other articles, the immediate delivery of which is necessary.

SEC. 483. CONSIGNEE AS OWNER OF MERCHANDISE.

For the purposes of this title—

(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill

of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof.  *  *  *

SEC. 499. EXAMINATION OF MERCHANDISE. (as amended by sec. 16 (a), Customs Administrative Act of 1938)

*       *       *       *       *       *       *

No appraisement made after the effective date of the Customs Administrative Act of 1938 shall be held invalid on the ground that the required number of packages or the required quantity of the merchandise was not designated for examination or, if designated, was not actually examined, unless the party claiming such invalidity shall establish that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect.

SEC. 505. PAYMENT OF DUTIES.

The consignee shall deposit with the collector, at the time of making entry, unless the merchandise is entered for warehouse or transportation, or under bond, the amount of duty estimated to be payable thereon. Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation.

SEC. 623. BONDS AND OTHER SECURITY (as amended by sec. 30, Customs Administrative Act of 1938).

(a) In any case in which bond or other security is not specifically required by law, the Secretary of the Treasury may by regulation or specific instruction require, or authorize collectors of customs to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury or the Customs Service may be authorized to enforce.

(b) Whenever a bond is required or authorized by a law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce, the Secretary of the Treasury may—

(1) Except as otherwise specifically provided by law, prescribe the conditions and form of such bond, and fix the amount of penalty thereof, whether for the payment of liquidated damages or of a penal sum: *Provided,* That when a consolidated bond authorized by paragraph 4 of this subsection is taken, the Secretary of the Treasury may fix the penalty of such bond without regard to any other provision of law, regulation, or instruction.

(2) Provide for the approval of the sureties on such bond, without regard to any general provision of law.

(3) Authorize the execution of a term bond the conditions of which shall extend to and cover similar cases of importations over such period of time, not to exceed one year, or such longer period as he may fix when in his opinion special circumstances existing in a particular instance require such longer period.

(4) Authorize, to the extent that he may deem necessary, the taking of a consolidated bond (single entry or term), in lieu of separate bonds to assure compliance with two or more provisions of law, regulations, or instructions which the Secretary of the Treasury or the Customs Service is authorized to enforce. A consolidated bond taken pursuant to the authority contained

in this subsection shall have the same force and effect in respect to every provision of law, regulation, or instruction for the purposes for which it is required as though separate bonds had been taken to assure compliance with each such provision.

(c) The Secretary of the Treasury may authorize the cancellation of any bond provided for in this section, or of any charge that may have been made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient.

(d) No condition in any bond taken to assure compliance with any law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce shall be held invalid on the ground that such condition is not specified in the law, regulation, or instruction authorizing or requiring the taking of such bond.

(e) The Secretary of the Treasury is authorized to permit the deposit of money or obligations of the United States, in such amount and upon such conditions as he may by regulation prescribe, in lieu of sureties on any bond required or authorized by a law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce.

The facts are not disputed. The testimony and documentary exhibits disclose that the importing vessel arrived at Pier 56, North River, on April 17, 1944, commenced discharging its cargo at 10 a. m. on April 18, 1944, and completed unlading at 10 a. m. on April 20, 1944.

Case APL 670 here involved was presumably landed in good order in that it was not reported by the ship's chief officer in his report of discrepancies between goods landed and those listed on the ship's manifest. Substantiating this presumption further, is the report of the discharging inspector to his superior which states that a checker employed by the steamship company had reported that he saw and checked the case off the ship.

The customs entry covering this case was filed with the collector on April 21, estimated duties paid thereon, and delivery permit issued on April 24. The broker who obtained the delivery permit gave it to the Government messenger service for delivery to the customs inspector on the pier. Said delivery permit was received by the customs inspector at 4:15 p. m. on the afternoon of April 24, was entered in his cargo book by him, a public stores ticket prepared, and both permit and ticket placed by said inspector in the steamship company's box at 5 p. m. of the same day. The evidence showed that according to the usual practice this would serve as notice to the steamship company's clerk to find the goods described in the permit and place them in a particular spot in order that, upon the arrival of the public stores cartman, the customs inspector could see that said goods were laden on the public stores truck.

It appears from the steamship company's records that its clerk received the permit at 8 a. m. the following morning, April 25. However, the customs inspector never received delivery of this case from

the steamship company, and on April 28 he first received information that this case could not be found. On that date he made his report that the goods had been landed from the vessel but not found for delivery.

On April 28, customs guards on the pier found wrapping paper and string, and a small cardboard carton which bore markings coinciding with those on this invoice, indicating probable pilferage.

The evidence shows that the importing firm did not receive any of the imported merchandise and so notified the collector. A report of this loss was made by the liquidating division to the Monies and Accounts Division, under section 448 of the Tariff Act of 1930, but later its records in this matter were closed because the actual time of disappearance of the merchandise could not be determined. The Monies and Accounts Division sent a bill to the owners of the importing vessel for the penalty incurred, amounting to the sum of the duties, to which it received·an acknowledgment. Thereupon, the collector's office notified the importer that the steamship company alleged that the loss had occurred after the issuance of the customs permit and that the customs authorities had no evidence to the contrary. The Monies and Accounts Division then closed the transaction on its records and canceled the liability of the steamship company under the bond.

Is the liquidation invalid for the reason that the merchandise was not examined by the appraiser? It is noted that the entry herein was filed and the appraiser's report made long after the effective date of the Customs Administrative Act of 1938. By section 16 (a) of that act, section 499 of the Tariff Act of 1930 relating to examination of merchandise was amended as set forth above. By express terms it is therein provided that "No appraisement" made subsequent to July 25, 1938 "shall be held invalid on the ground that the * * * required quantity of the merchandise * * * was not actually examined" unless the party claiming such invalidity establishes certain discrepancies therein set forth, in which event the appraisement should be held invalid "only as to the merchandise for which the value returned by the appraiser is shown to be incorrect." There is no proof in the instant case that the merchandise was other or different from that described on the invoice and entry, nor that the action of the appraiser was incorrect. Therefore, the importer has not brought himself within the terms of the statute and its claim that the appraisement is invalid cannot be sustained. In any event liquidation herein was based upon the entered value and the cases have held consistently that the importer is bound by his entered value even where the final appraised value is less than that at which the merchandise is entered and the entered value is shown to be erroneous. *Vantine* v. *United States*, 91 Fed. 519; *Daloz* v. *United States*, 171 Fed. 275; *Belbach* v.

*United States*, 11 Ct. Cust. Appls. 84, T. D. 38733; *United States* v. *Lawrence*, 11 Ct. Cust. Appls. 203, T. D. 38967; *Ciba Co.* v. *United States*, 14 Ct. Cust. Appls. 309, T. D. 41913; *Landeck* v. *United States*, 47 Treas. Dec. 620, T. D. 40897 (G. A. 8994); and *Huber* v. *United States*, 70 Treas. Dec. 983, T. D. 48721. We therefore overrule the claim that the appraisement is void and that the liquidation based thereon is also invalid.

Is the importer in this case relieved of liability for the duties because of the provisions of section 448 (a), *supra*? The rule long in existence derived from the common law is that the owner of imported merchandise is liable for the payment of customs duties; that such duties are a personal debt and charge upon him, as well as a lien on the goods themselves. If both remedies are unavailing, the collector is permitted to proceed against the sureties in customs bonds filed in connection with the entries. *Westray* v. *United States*, 18 Wall. 322. In that case the Supreme Court held that the Government may collect duties by a proceeding *in rem*. See also *Harris* v. *Dennie*, 3 Peters 292, wherein it was held that the Government has a lien on imported merchandise if no bond is given to secure the payment of duties. And again in *United States* v. *350 Chests of Tea*, 12 Wheat. 486, it was held that the Government's lien for duties is not discharged by illegal removal of the goods from customs custody. In *Meredith* v. *United States*, 13 Peters 486, the court laid down the rule that an action in debt would lie against an importer for duties, independently of any lien on the goods or any bond for the duties. This last-cited case is the leading authority on the right of the Government to collect customs duties as a personal debt of the importer. It has been followed by the courts consistently. Note *United States* v. *Chamberlin*, 219 U. S. 250, holding also that statutory provisions for penalties do not exclude personal liability for the payment of taxes; *United States* v. *Sherman*, 237 U. S. 146, 154; *Shriver* v. *Woodbine Bank*, 285 U. S. 467, 477, holding also that the enactment of one statutory remedy does not mean that it shall be an exclusive remedy. See also *United States* v. *Cobb*, 11 Fed. 76; *United States* v. *National Fibre Board Co.*, 133 Fed. 596; *United States* v. *Mexican International R. Co.*, 154 Fed. 519; *United States* v. *Heitz*, 238 Fed. 1002; and *Brown* v. *United States*, 12 Ct. Cust. Appls. 93, T. D. 40026.

From these authorities it is clear that where foreign goods are landed in the United States, as is the case here, their loss or destruction before they have become available to the owner does not preclude the duties thereon from becoming a personal debt of said owner or consignee; that, in the absence of express terms the existence of one statutory remedy for collection of duties thereon is not exclusive; and that the Government is not restricted to any particular method of collecting

duties, except that under the general rule a remedy against a principal must first be exhausted before that of the surety may be invoked.

Section 448 (a), while creating an additional statutory liability for duties on the part of the owners of the importing vessel, contains no language indicative of a legislative intent that such liability shall supersede that of the consignee under section 505, requiring the owner or consignee to deposit such duties upon the filing of the customs entry.

A careful perusal of said section, taken in connection with the testimony of the customs broker in this case, indicates that the liability of the vessel owners is in the nature of a penalty for the negligence on the part of said carrier in cases where the imported merchandise is permitted to be "removed from the place of unlading" without the delivery of a customs permit therefor. This is apparent from the testimony of the customs broker that a customs delivery permit is not "issued" until the owner of the merchandise has deposited the amount of the duties and that at any time prior thereto the importer may withdraw his entry. This is a clear indication that Congress in enacting this provision intended to protect the revenue in cases where the importer fails to deposit the duties and no delivery permit is issued.

That situation is not before us. Here the importer deposited the duties and a delivery permit was issued. In this case the revenue was amply protected and it was unnecessary to resort to section 448 (a).

We have been unable to find anywhere in the tariff act an indication that the collection of duties from the steamship company on its bond was intended to release the importer from its personal obligation to pay the duties by depositing same with the collector at the time of entry. The rule as announced in the *Chamberlin* case, *supra*, is applicable here, i. e., that it will not be presumed that Congress intends, by penalizing delinquency, to deprive the Government of suitable means of enforcing the collection of the revenue. In this connection it is noted that section 505, set forth above, requires the owner of the merchandise to deposit customs duties at the time of entry. No exception is made in cases where the importing vessel may become liable under said section 448 (a). The language of said section is mandatory, and the statute contains no provision making the liability of the owner for the payment of customs duties upon imported merchandise contingent upon the happening of any future event. Under such conditions the claim in plaintiff's brief that the collector should have suspended liquidation until the liability of the steamship company had been determined by a suit under the carrier's bond is without merit, and his claim that the importer is relieved from

liability for duties by reason of the vessel liability clause in section 448 (a), *supra*, is likewise unwarranted.

Taking up plaintiff's third claim, that the collector should have proceeded under the steamship company's bond before proceeding to liquidation and that his liquidation is therefore premature, it is sufficient to state that the terms of the bond are not in evidence and further, that section 623, as amended, as set forth above, vests exclusive jurisdiction and broad discretionary powers in the Secretary of the Treasury in the administration of matters dealing with customs bonds, their violation, and cancellation. This was set forth in unequivocal language in the case of *United States* v. *Smith*, 25 C. C. P. A. (Customs) 163, T. D. 49267. This court has no jurisdiction to review the discretionary powers granted to the Secretary of the Treasury. We therefore hold that any action taken by officers of the Treasury Department in connection with enforcement or cancellation of the vessel's customs bond under section 623, *supra*, is not subject to review by this court, nor have we authority to direct the collector to proceed to have the liability of the owners of the importing vessel "determined by appropriate court action on the vessel bond  *  *  *."

For the foregoing reasons and under authority of the cases cited, we dismiss plaintiff's claim on the last above-mentioned ground and overrule the protest as to all other claims.

In so doing we are not to be understood as lacking in sympathy for the plaintiff's position. However, having no equity jurisdiction but being required to adhere strictly to the statute creating this body, we are without power to grant relief in this case.

Judgment will be rendered in accordance with this decision.