BEFORE THE THIRD DIVISION, OCTOBER 27, 1948

**No. 52646.**—American Pillowcase & Lace Co. *v.* United States, protest 117425–K (New York).

CLINE, Judge:    This is a rehearing of a protest against the assessment of duty by the collector on a case of linen handkerchiefs imported from England.    The case was originally decided in favor of the defendant in 20 Cust. Ct. 53, C. D. 1083.    Thereafter, an application for a rehearing was filed by the plaintiff and granted by the court.

The case involves merchandise which was landed from the importing vessel but was taken from the pier (apparently stolen) and never recovered.    Entry had been made and estimated duties paid before the loss was discovered.    A report of the loss was made by the liquidating division to the Monies and Accounts Division and a claim was made against the steamship company for duties under section 448 (a) of the Tariff Act of 1930.    The claim was rejected by the company and no further action was taken.    The collector notified the importer that the company alleged that the loss had occurred after the permit was issued and that the customs authorities had no evidence to the contrary.

The importer protested the liquidation assessing duties against it, claiming (1) that the liquidation was illegal for the reason that the merchandise was not examined by the appraiser; (2) that the importer was relieved from liability under the provisions of section 448; (3) that the liquidation was premature because the collector failed to bring an action on the bond against the steamship company.

The original decision states the facts as follows:

The facts are not disputed.    The testimony and documentary exhibits disclose that the importing vessel arrived at Pier 56, North River, on April 17, 1944, commenced discharging its cargo at 10 a. m. on April 18, 1944, and completed unlading at 10 a. m. on April 20, 1944.

Case APL 670 here involved was presumably landed in good order in that it was not reported by the ship's chief officer in his report of discrepancies between goods landed and those listed on the ship's manifest.    Substantiating this presumption further, is the report of the discharging inspector to his superior which states that a checker employed by the steamship company had reported that he saw and checked the case off the ship.

The customs entry covering this case was filed with the collector on April 21, estimated duties paid thereon, and delivery permit issued on April 24.    The broker who obtained the delivery permit gave it to the Government messenger service for delivery to the customs inspector on the pier.    Said delivery permit was received by the customs inspector at 4:15 p. m. on the afternoon of April 24, was entered in his cargo book by him, a public stores ticket prepared, and both permit and ticket placed by said inspector in the steamship company's box at 5 p. m. of the same day.    The evidence showed that according to the usual practice this would serve as notice to the steamship company's clerk to find the goods described in the permit and place them in a particular spot in order that, upon the arrival of the public stores cartman, the customs inspector could see that said goods were laden on the public stores truck.

It appears from the steamship company's records that its clerk received the permit at 8 a. m. the following morning, April 25.    However, the customs inspector never received delivery of this case from the steamship company, and on April 28 he first received information that this case could not be found.    On that

date he made his report that the goods had been landed from the vessel but not found for delivery.

On April 28, customs guards on the pier found wrapping paper and string, and a small cardboard carton which bore markings coinciding with those on this invoice, indicating probable pilferage.

The court held that the liquidation was not invalid because the merchandise was not examined by the appraiser, in view of section 499 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, since there was no proof that the merchandise was different from that described in the invoice; that the importer was not relieved of liability because of the provisions of section 448 (a) since duties are a personal debt of the owner or consignee, since the existence of one statutory remedy is not exclusive, and since the Government is not restricted to any particular method of collecting duties; that the court has no authority to direct the collector to proceed under the bond given by the steamship company or to withhold liquidation until such suit shall have been instituted.

Plaintiff contends that the court has full power and jurisdiction to decide the questions raised by it, namely, that under the provisions of section 448 (a) the liability of the steamship company for the payment of duties in case of merchandise removed from the place of unlading without a permit is a special and prior liability which should be pursued before recourse is had to the general liability of the importer. It is also claimed that the liquidation herein is voidable because premature, in that neither the collector nor the Secretary of the Treasury has taken any action on the vessel bond for the purpose of determining whether or not the steamship company is liable under the circumstances set forth above.

The pertinent provisions of section 448 (a) provide:

* * * After the entry, preliminary or otherwise, of any vessel or report of the arrival of any vehicle, the collector may issue a permit to the master of the vessel, or to the person in charge of the vehicle, to unlade merchandise or baggage, but except as provided in subdivision (b) of this section merchandise or baggage so unladen shall be retained at the place of unlading until entry therefor is made and a permit for its delivery granted, and the owners of the vessel or vehicle from which any imported merchandise is unladen prior to entry of such merchandise shall be liable for the payment of the duties accruing on any part thereof that may be removed from the place of unlading without a permit therefor having been issued. * * *

In order to sustain plaintiff's claim it would be necessary to hold (1) that section 448 (a) creates a prior liability on the part of the steamship company; and (2) that the collector must have that liability determined in a legal proceeding of some kind before he may liquidate the importer's entry.

It will be noted that in the instant case a claim was made against the steamship company, but was not prosecuted further because the collector did not feel he had sufficient evidence to sustain it. Plaintiff is claiming in effect that the collector must bring an action, even if he does not think it is warranted. Even if such an action were brought, the Secretary of the Treasury could authorize the cancellation of the bond on which it was brought "upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient." (Section 623, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.)

Section 448 (a) provides for liability on the part of the steamship company where merchandise has been unladen prior to entry and has been removed from the place of unlading without a permit having been issued. There is nothing to indicate that this is a special or prior liability to that of the owner or consignee provided for in section 505. Section 505 provides that the consignee shall deposit the estimated duties at the time of making entry. It is apparent that section

448 (a) was enacted to protect the revenue in cases where goods were not entered and duties deposited, but where the goods were removed without authorization. In such a situation the Government would have neither the owner nor the goods to look to for payment; therefore, liability on the part of the vessel owner was created. It is in the nature of a penalty for the company's negligence in allowing an unauthorized removal of the goods.

It is a fundamental proposition that duties accrue upon merchandise at the time it crosses the customs line and that the destruction or loss of the same after it enters the customs district does not relieve the importer from the payment of duties. *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074. In *McKesson & Robbins (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 124, T. D. 40959, one of a number of cases landed was reported as stolen while on the pier in charge of the customs inspector. The collector assessed duty and the importer protested. It was held that no allowance for deficiency could be made.

It is also clearly established that duties on imported merchandise are a personal debt of the importer upon the arrival of the goods at the proper port of entry and that where a deposit of the goods is made, the rights of the Government are not limited to a lien upon the goods. *Meredith* v. *United States*, 13 Peters 486; *United States* v. *Sherman & Sons Company*, 237 U. S. 146.

In *United States* v. *Chamberlin*, 219 U. S. 250, it was held that a personal action could be brought by the United States to recover a stamp tax, although certain provisions of the statute imposed penalties for issuing an unstamped conveyance. In other words, a statutory provision for penalties will not exclude personal liability for the payment of taxes.

We are therefore in accord with the holding in our original decision as follows:

We have been unable to find anywhere in the tariff act an indication that the collection of duties from the steamship company on its bond was intended to release the importer from its personal obligation to pay the duties by depositing same with the collector at the time of entry. The rule as announced in the *Chamberlin* case, *supra*, is applicable here, i. e., that it will not be presumed that Congress intends, by penalizing delinquency, to deprive the Government of suitable means of enforcing the collection of the revenue. In this connection it is noted that section 505, set forth above, requires the owner of the merchandise to deposit customs duties at the time of entry. No exception is made in cases where the importing vessel may become liable under said section 448 (a). The language of said section is mandatory, and the statute contains no provision making the liability of the owner for the payment of customs duties upon imported merchandise contingent upon the happening of any future event. Under such conditions the claim in plaintiff's brief that the collector should have suspended liquidation until the liability of the steamship company had been determined by a suit under the carrier's bond is without merit, and his claim that the importer is relieved from liability for duties by reason of the vessel liability clause in section 448 (a), *supra*, is likewise unwarranted.

The collector may have had a choice of proceeding against the steamship company or against the importer, but, since the remedies are concurrent, this court has no jurisdiction to compel him to choose a different remedy than the one he has selected. The importer may have his remedy against the steamship company for its negligence and the damages flowing therefrom.

For the foregoing reasons, we adhere to our original judgment and decision overruling the protest. Judgment will be rendered accordingly.

### DISSENTING OPINION

EKWALL, Judge: I am unable to agree with the views of my colleagues as expressed in the majority opinion. It was my understanding of the situation as presented by the record made at the first hearing that the steamship bond was cancelled. I therefore concluded that, having no jurisdiction over the action under the bond, the duty of this court under the authorities originally cited did

not extend to a direction to the collector to proceed under said bond. This conclusion was reached by me on the further assumption that the bond having been cancelled the collector had no choice but to enforce the liability of the importer for the duties due.

On rehearing certain evidence which had been excluded by the judge who heard the case originally, was admitted, including the terms of the steamship bond. A photostat thereof is now before us. It is what is known as a term bond, the term thereof being from May 1, 1943, to April 30, 1944. The termination of the bond, insofar as the right of the steamship to unlade or take other action thereunder, in my opinion, could not affect the right of the collector to proceed under its terms for violations that may have occurred during the term. It follows that although the deputy collector, who testified at both hearings, may have considered the liability of the steamship company terminated, so far as his division and the liquidating division were concerned, the claim under the steamship bond for duties on the merchandise involved herein might have been prosecuted under the provisions of section 448 of the Tariff Act of 1930, and the liquidation of the entry withheld. In the event that the Government authorities should have been unsuccessful in that action, they could then have proceeded to liquidate the entry, from which liquidation the importer or consignee would have had its remedy by protest.

Insofar as the facts of this case are disclosed by the record it appears to me that it is the duty of this court, in order that the ends of justice may be served, to hold that the liquidation is illegal in that the collector should have first exhausted his remedy for the collection of the penalty under the bond. Although this court has no authority to direct the collector to so proceed, I consider that under the circumstances the liquidation herein is premature and therefore null and void. However, I think no finding should be made as to the proof requisite to establish the liability of the owners of the vessel for the duties, that matter being beyond the jurisdiction of this court.

For the foregoing reasons it is my view that the liquidation is premature and that proper steps should be taken by the customs authorities toward a legal liquidation.