(C. D. 1305)

Abraham & Straus, Inc. v. United States

United States Customs Court, Third Division

(Decided February 20, 1951)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before Cline, Ekwall, and Johnson, Judges

Johnson, Judge: This action involves the amount of duty assessed upon one case of hand-embroidered linen articles imported from Italy. The plaintiff claims that none of the embroideries were imported into the United States.

The entry papers disclose that the embroidered articles were invoiced as being contained in case 1727. That case was designated for examination by the appraiser. However, a "change slip" was sent to the appraiser by J. M. Geary, Recall Desk of the United States Custom House, designating that case 1331/1 be sent instead of case 1727. Under the heading "REMARKS" appears the following: "#1727 not manifested not found. 1331/1 sent to P. S." The inspector's report to the collector of customs is quite contradictory. Inspector McGowan noted that case 1727 was "not manifested not found," but that notation is scratched out. Further down on the report appears a notation, in different handwriting but not initialed, as follows: "Landed in good order." This notation is circled in red pencil. On the next line, following the notation, appears:

of the within case 1/9/47 A & S #1727, case found empty on pier. (Steamship Co. claims landed empty) ~~Landed in good order & on examination found Empty.~~

Immediately above the line which is crossed out there is written "void J. J. McG." The above-quoted notation was signed "P. Krauss Per J. McGowan, Insp." On the next line appears a notation, underlined in red ink, reading:

Found
case #1727 ~~landed~~ Empty. Case destroyed. J. J. McGowan.
2/17/47 J. McG.

On the next line, the final notation reads:

Found
Case was ~~landed~~ empty.　　Wasn't on pier at time.
J. McG.　　　　　　　　J. McG.

The last five words of this notation were underlined in red pencil.

At the trial Inspector Paul Krauss testified on behalf of the plaintiff substantially that he was not on the pier at the time the notations were made. He was there when the ship began to discharge its cargo but was called to other duties; and that at the time he examined the ship's manifest covering the cargo, he noted that case 1727 was manifested, but he neither found case 1727 nor looked for it. He merely started the discharging of the vessel. Other inspectors finished it. According to the witness, if the discharging inspector does not receive a notice within 48 hours that a case is missing, or is in bad order, the inspector *assumes* it has been landed in good order, irrespective of whether or not it has been so landed, for the reason that there are 3 or 4 weeks between the time of delivery and the time the goods are put on the dock. On cross-examination, the witness was asked the following questions:

X Q. * * * If you had examined the cargo covered by this entry would you have made a notation on the back of the permit to the effect that you found it in good order or in bad order, or make some reference to it?

*　　　*　　　*　　　*　　　*　　　*　　　*

A. No, sir, not unless somebody brought to my attention that this thing was broken into or the boards were broken, or anything like that, then——

X Q. Who would generally call that to your attention?—A. The checker who at the time has the stuff delivered from the dock.

X Q. Checker from where?—A. In this case, American President Lines * * *

X Q. That is the shipping company?—A. That is right, sir.

X Q. And was it ever called to your attention?—A. No, sir.

X Q. Therefore, you made no report whatsoever on the back of the permit?—A. That is right.

The witness further testified that no notations are made on the permit until the cargo is fully completed, and then "we have what is manifest and we have what is not manifested, and we have what is called a discrepancy sheet." Whatever is not manifested and not found, according to the witness, is placed on one particular side and whatever is supposed to have been manifested and not found on another particular side. That information is not known until the discharge from the vessel is completed. Thus, no notation is made on the entry permits unless it is brought up for delivery.

Inspector James J. McGowan testified on behalf of the plaintiff that he had nothing to do with the discharge of the cargo from the ship. He took the ship over for completion of delivery. The ship had been fully discharged at the time. He signed Mr. Krauss' name on the

papers.   He also testified that he could definitely say that case 1727 was landed as he saw it at the time a report was received from the customs agents to destroy the case.   He stated further as follows:

\* \* \* I believe the report was made on it that it was landed in bad order, and we got a report that the steamship company could destroy the case.

When the witness saw the case, no merchandise was in it.   He admitted that he wrote "Landed in good order."   The witness further testified as follows:

Q.   At the time you made that report the statement appears, "Case #1727 landed empty."   Then under the word "landed" appears another date, February 17th; and then there are two lines drawn through the word "landed."   Now, were those words "landed empty" there January 9, 1947, and does the date February 17th apply to your statement now striking that out and using the word "found"?—A.   That applies to the February 17th date.

Q.   "Found"?—A.   "Found."

Q.   But originally in January it was "landed empty," the original statement?— A.   Yes, sir.

Q.   But you struck that out?—A.   I didn't strike it out.

Q.   You struck out the word——
Mr. VITALE: Let him answer.
A.   I haven't struck out the words "landed empty" from our records.

   \*       \*       \*       \*       \*       \*       \*

Q.   \* \* \* but I say originally your report was "landed empty," isn't that correct?—A.   No; my original report on January 9th——

   \*       \*       \*       \*       \*       \*       \*

A.   (continuing)   My original report says "Landed in good order" on January 9th, "Of the within case A & S #1727."

JUDGE EKWALL:   "Landed in good order"?
THE WITNESS:   "Landed in good order.   Case found empty on pier."   Then I have, in brackets, "Steamship Co. claims landed empty."

My reason for putting "Case landed empty" is that I didn't know at the time what record they had turned over to us, to show if they had reported the case landed in good order or bad order at the time of discharge of the vessel \* \* \*.

Now, in this particular case we had no report that it was landed in bad order. So, therefore, we are instructed, through our Customs Manual, to make our returns that they are landed in good order, and I believe I know that case was reported around December 30th—I think it is about two weeks after discharge of the ship—that it was empty, by the steamship company.

The witness further testified that he reported "Landed in good order" because of the previous inspector's record of discharge of the ship, and from no notification of the steamship company to the contrary.   Not having any information to the contrary, he assumed it was landed in good order, but the witness could not say it was actually landed from the ship in good order.   The case came to his attention almost a month after it was discharged from the vessel.

The plaintiff contends that the merchandise was not actually imported into the United States, relying upon the decision of this court in *F. W. Woolworth Co.* v. *United States*, 22 Cust. Ct. 197, C. D. 1176, relative to a shortage of handkerchiefs discovered in a case released from the custody of the customs in "apparent" good order, and found upon opening of the case at the importer's warehouse that a portion of the contents was missing, wherein the court held that where a case has been under constant supervision from the time it left customs custody until the shortage was discovered, it was established that the goods were not stolen after landing. Plaintiff also cites *Meadows, Wye & Co.* v. *United States*, 12 Ct. Cust. Appls. 396, T. D. 40583, where the court stated that when an inspector undertakes to list the contents of a case, there is a strong presumption that the shortage existed at that time. Concerning missing goods not discovered until after delivery to the importer and a case where the inspectors did not observe any bad order, the court was of the opinion that inasmuch as it was part and parcel of the same shipment as the case found to have been tampered with, the importer had established *prima facie*, at least, that there was a shortage also in that particular box.

The Government contends that, upon the evidence produced in this case, it is reasonable to conclude that the loss occurred on the pier after it had been landed from the discharging vessel, relying upon the case of *American Pillowcase & Lace Co.* v. *United States*, 21 Cust. Ct. 228, Abstract 52646, where the court observed that duties accrue upon merchandise at the time it crosses the customs line and that the destruction or loss of the same after it enters the customs district does not relieve the importer from the payment of duties. That action involved a case of linen handkerchiefs landed from the importing vessel but stolen from the pier and never recovered. There was no claim of shortage made. A checker from the steamship company had checked the case off the ship and 3 days thereafter customs guards found wrapping paper and string and a small cardboard carton which bore markings coinciding with those on the invoice, thus indicating pilferage. The case itself was never discovered. The situation before us in the pending action is not analogous in any particular.

In the case of *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, the appellate court made the following observation:

While it is true under the ordinary hard and fast principle of substantive law that duties accrue upon imported merchandise at the exact moment they cross the line within the customs district, it is equally true that the whole framework of customs administrative law and regulations are constructed upon the principle that, while duties actually accrue at the time stated, the ascertainment of the amount of duties which have thus and then accrued, and the amount of merchandise which has been imported, its condition, and in every respect its dutiable status, are ascertained as of the time they cross said line by examinations and inspections of their condition at the subsequent time of weighing, gauging, ap-

praising, etc. It would be a physical impossibility to otherwise ascertain their dutiable status.

In recognition of this truth the Congress by statute prescribed certain rules of statutory evidence to be ascertained at the time of examination or other inspection of the goods, and has enacted that the results then ascertained and certified shall become legal evidence of their existence at the time the goods were brought within the customs district.

In the controversy before us here, an actual examination of the case in question was not made until it was found to be empty. Had the case been sent to the appraiser's stores under its original designation for examination, and the appraiser had examined it and found it to be empty, under the law the collector would have been required to remit all duty applicable to the invoiced contents thereof, section 499, Tariff Act of 1930, providing that "If a deficiency is found in quantity * * * in the examination of any package, report thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties." Here, the inspectors found the case to be empty. Under the authority of the *Shallus* case, *supra*, such condition is presumed to have prevailed at the time the goods crossed the customs line.

This court is of the opinion that no duty should have been assessed upon the invoiced quantities of the embroidered linen articles not actually found to have been contained in case 1727 at the time of landing in the United States. Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry and refund all duties taken upon the linen embroidered articles invoiced as contained in case 1727.